## STATEWIDE GRIEVANCE COMMITTEE *v.* ALAN SPIRER
## (SC 15853)

Callahan, C. J., and Borden, Katz, Palmer and McDonald, Js.

Argued December 10, 1998—officially released March 2, 1999

*Wesley W. Horton*, with whom were *Kimberly A. Knox* and, on the brief, *Timothy J. Olson* and *Kevin B. Hawkins*, certified legal interns, for the appellant (defendant).

*Daniel B. Horwitch*, statewide bar counsel, with whom, on the brief, was *Sharon M. Carberry*, assistant bar counsel, for the appellee (plaintiff).

*Opinion*

KATZ, J. This certified appeal arises out of the trial court's suspension of the defendant, Alan Spirer, from the practice of law, following his felony convictions in federal court. The principal issue is whether the trial court properly exercised its discretion in imposing on the defendant a six month suspension, or whether, as claimed by the plaintiff, the statewide grievance committee (committee), the court was required to impose

a longer suspension. We conclude that the trial court did not abuse its discretion. Accordingly, we reverse the judgment of the Appellate Court.

The following facts, which appear in the Appellate Court opinion, are pertinent to this appeal. "After a plea of guilty in the federal court, Dorsey, J., the defendant was convicted on June 28, 1995, of violating 18 U.S.C. § 1344 (a) (1) and (2),[1] and 18 U.S.C. § 2,[2] for defrauding a financial institution and for aiding and abetting an offense against the United States, respectively. He was sentenced to probation of three years, and was ordered to pay $7030.80 for the cost of his supervision, restitution in the amount of $75,000, and a fine of $5000. In addition, the defendant was confined to his home for one year under an electronic monitoring system, and was required to perform four hours of community service per week in a local legal aid agency for the first two years of the probation.

---

[1] "At the time of the defendant's offense, 18 U.S.C. § 1344 (a) provided: 'Whoever knowingly executes, or attempts to execute, a scheme or artifice—

" '(1) to defraud a federally chartered or insured financial institution; or

" '(2) to obtain any of the moneys, funds, credits, assets, securities or other property owned by or under the custody or control of a federally chartered or insured financial institution by means of false or fraudulent pretenses, representations, or promises, shall be fined not more than $10,000, or imprisoned not more than five years, or both.'

"In 1989, 18 U.S.C. § 1344 was amended to provide: 'Whoever knowingly executes, or attempts to execute, a scheme or artifice—

" '(1) to defraud a financial institution; or

" '(2) to obtain any of the moneys, funds, credits, assets, securities, or other property owned by, or under the custody or control of, a financial institution, by means of false or fraudulent pretenses, representations, or promises;

" 'shall be fined not more than $1,000,000 or imprisoned not more than 20 years, or both.' " *Statewide Grievance Committee* v. *Spirer*, 46 Conn. App. 450, 451 n.1, 699 A.2d 1047 (1997).

A subsequent amendment in 1990 changed the term of imprisonment in § 1344 (2) from twenty to thirty years.

[2] Title 18 of the United States Code, § 2, provides: "(a) Whoever commits an offense against the United States or aids, abets, counsels, commands, induces or procures its commission, is punishable as a principal.

"The committee filed a presentment in the trial court pursuant to Practice Book [§ 2-41, formerly § 28B.1][3] in order to seek the defendant's suspension from the practice of law. The trial court suspended the defendant from the practice of law for six months. During the

"(b) Whoever willfully causes an act to be done which if directly performed by him or another would be an offense against the United States, is punishable as a principal."

[3] Practice Book § 2-41, which pertains to the discipline of attorneys convicted of a felony in another jurisdiction, provides: "(a) An attorney shall send to the statewide bar counsel written notice of his or her conviction in any court of the United States, or the District of Columbia, or of any state, territory, commonwealth or possession of the United States of a serious crime as hereinafter defined within ten days of the entry of the judgment of conviction. That written notice shall be sent by certified mail, return receipt requested.

"(b) The term 'conviction' as used herein refers to the disposition of any charge of a serious crime as hereinafter defined resulting from either a plea of guilty or nolo contendere or from a verdict after trial or otherwise, and regardless of the pendency of any appeal.

"(c) The term 'serious crime' as used herein shall mean any felony as defined in the jurisdiction in which the attorney was convicted.

"(d) The written notice required by subsection (a) of this section shall include the name and address of the court in which the judgment of conviction was entered, the date of the judgment of conviction, and the specific section of the applicable criminal or penal code upon which the conviction is predicated.

"(e) Upon receipt of the written notice of conviction the statewide bar counsel shall obtain a certified copy of the attorney's judgment of conviction, which certified copy shall be conclusive evidence of the commission of that crime in any disciplinary proceeding instituted against that attorney on the basis of the conviction. Upon receipt of the certified copy of the judgment of conviction, the statewide bar counsel shall file a presentment against the attorney with the superior court for the judicial district wherein the attorney maintains an office for the practice of law in this state, except that, if the attorney has no such office, the statewide bar counsel shall file it with the superior court for the judicial district of Hartford. The sole issue to be determined in the presentment proceeding shall be the extent of the final discipline to be imposed, provided that the presentment proceeding instituted will not be brought to hearing until all appeals from the conviction are concluded unless the attorney requests that the matter not be deferred. The statewide bar counsel shall also apply to the court for an order of immediate interim suspension, which application shall contain the certified copy of the judgment of conviction. The court may in its discretion enter an order immediately suspending the attorney pending final disposition

presentment proceeding, the committee did not argue to the trial court that the defendant should be disbarred, nor did it argue for a specific term of suspension, although it argued that the defendant should be suspended for some period of time.

"The events that led to the defendant's arrest and sentencing in federal court and suspension from the practice of law in state court are those that follow. The defendant was a named partner in the law firm of Spirer, Nasser and Marcus in Westport. Various members of the firm developed a scheme whereby financially distressed homeowners could refinance their homes through what was purported to be a sale of the property. The firm represented Comfed Savings Bank, Comfed Mortgage Company, and the Swiss Conservative Group . . . .

"The transactions organized by the defendant's firm involved situations where a 'buyer' who was not a bona fide purchaser, but instead a friend or relative of the 'seller,' would purport to 'buy' the property from the 'seller' and would lease the property back to the 'seller.' Swiss [Conservative Group] was responsible for providing a 'buyer' if the 'seller' did not have one already. [It] would arrange a new mortgage such that the 'buyer's' monthly lease payment would equal the amount of the

---

of a disciplinary proceeding predicated upon the judgment of conviction. Thereafter, upon good cause shown, the court may, in the interest of justice, set aside or modify the interim suspension. Whenever the court enters an order suspending or disbarring an attorney pursuant to this section, the court may appoint a trustee, pursuant to Section 2-64, to protect the client's and the attorney's interests.

"(f) If an attorney suspended solely under the provisions of this section demonstrates to the court that the underlying judgment of conviction has been vacated or reversed, the court shall vacate the order of interim suspension and place the attorney on active status. The vacating of the interim suspension shall not automatically terminate any other disciplinary proceeding then pending against the attorney.

"(g) An attorney's failure to send the written notice required by this section shall constitute misconduct.

"(h) No entry fee shall be required for proceedings hereunder."

mortgage payment on the property. The 'seller' and the 'buyer' would execute four agreements: a contract for the sale of real property, a lease, an option agreement, and a three party agreement between the 'seller,' the 'buyer' and Swiss [Conservative Group]. The contract of sale, which was the only one of the four agreements that the mortgagee bank was ever given, described the purported sale. The lease arranged for the 'buyer' to pay the mortgage as the lease payment. The option agreement gave the 'seller' the ability to regain title to the property. Finally, the third party agreement provided for a fee to Swiss [Conservative Group] equaling 20 percent of the 'sale price' of the property. In effect, the mortgagee bank was led to believe that it was lending to a bona fide purchaser, when in fact there was no actual sale being made.

"The defendant's firm participated as closing attorneys in several transactions of this kind between February, 1988, and May, 1989. The firm was required by the Comfed Savings Bank to fill out a United States Department of Housing and Urban Development Statement, Form HUD-1 (HUD-1). The closing attorney needed to certify on that form that the funds distributed were a true and accurate accounting of the transaction. Here, the certification was false. The trial court found that although the defendant made it clear to his partners that he did not approve of these transactions, he was fully aware of the transactions and did nothing to stop the fraudulent activity. In addition, the trial court found that the defendant was aware that the HUD-1 forms were being falsified. The defendant's conviction in federal court arose out of a transaction that began in September, 1988.

"The committee claim[ed] on appeal [to the Appellate Court] that the trial court abused its discretion when it (1) suspended the defendant from the practice of law for only six months, and (2) did not discipline the

defendant further because of his admission at the pre-sentment hearing that he had made certain misrepresen-tations in federal court." *Statewide Grievance Committee* v. *Spirer*, 46 Conn. App. 450, 451–54, 699 A.2d 1047 (1997). The Appellate Court reversed the trial court's judgment and ordered a suspension of at least five years.

In reaching its decision, the Appellate Court noted that "[h]earings concerning the eligibility to practice law of attorneys who have been convicted of a felony in Connecticut are governed by [Practice Book § 2-40,[4]

---

[4] Practice Book § 2-40, which pertains to the discipline of attorneys con-victed of a felony "in Connecticut," provides: "(a) The clerk of the superior court location in this state in which a lawyer is convicted of a felony shall transmit, immediately upon the imposition of sentence, a certificate of the conviction to the statewide bar counsel and to the statewide grievance committee. The statewide bar counsel or designee shall, pursuant to Section 2-47, file a presentment against the lawyer predicated upon the conviction. No entry fee shall be required for proceedings hereunder.

"(b) The provisions of subsection (c) of this section notwithstanding, after sentencing an attorney who has been convicted of a felony, the judge who presided at the trial may in his or her discretion enter an order immedi-ately suspending the attorney pending final disposition of a disciplinary proceeding predicated upon the conviction. Thereafter, upon good cause shown, the judge before whom the presentment is pending may, in the interest of justice, set aside or modify the interim suspension.

"(c) A presentment filed pursuant to this section shall be heard by the judge who presided at the trial which resulted in the felony conviction. A hearing on the presentment complaint addressing the issue of the eligibility of such attorney to continue the practice of law in this state shall be held within thirty days of sentencing or the filing of the presentment, whichever is later. Such hearing shall be prosecuted by the statewide bar counsel, an assistant bar counsel or an attorney designated pursuant to Section 2-48. At such hearing the attorney shall have the right to counsel, to be heard in his or her own defense and to present evidence and witnesses in his or her behalf. After such hearing, the judge shall enter an order dismissing the matter or imposing discipline upon such attorney in the form of suspension for a period of time, disbarment or such other discipline as the judge deems appropriate.

"(d) Whenever the judge enters an order suspending or disbarring an attorney pursuant to subsections (b) or (c) of this section, it may appoint a trustee, pursuant to Section 2-64, to protect the clients' and the attor-ney's interests."

formerly § 28B] and by General Statutes § 51-91a";[5] id., 454; neither of which applied expressly to attorneys convicted of a felony in federal court or the court of another state. Id., 454–55. Additionally, the Appellate Court asserted that Practice Book § 2-41 only "provides for the procedural aspects of this type of case." Id., 455. Perceiving "a void in the statutes and rules of practice concerning such cases"; id., 455–56; the Appellate Court, relying on its "inherent supervisory authority over attorney conduct"; id., 460, citing *Pinsky* v. *Statewide Grievance Committee*, 216 Conn. 228, 232, 578 A.2d 1075 (1990); expanded the application of § 51-91a and concluded that the statute "should be applied to attorneys who have been convicted of felonies in federal court or in other state courts." *Statewide Grievance Committee* v. *Spirer*, supra, 46 Conn. App. 460. Finally, the Appellate Court held that the trial court had no discretion to impose a six month sentence but, rather, in accordance with § 51-91a, was "bound to impose a sanction of suspension from the practice of law for at least five years." Id., 466. Accordingly, the Appellate Court reversed the trial court's judgment and remanded

---

[5] General Statutes § 51-91a provides: "Hearing re eligibility to continue practice of law for attorney convicted of felony. Order. Suspension. Appointment of trustee. (a) After sentencing an attorney who has been convicted of a felony, the court shall hold a hearing on the issue of the eligibility of such attorney to continue the practice of law in this state. Such hearing shall be held within thirty days of sentencing or when all appeals from the conviction are concluded, whichever is later, except that the attorney may request that the hearing not be delayed until all appeals are concluded.

"(b) At such hearing, the attorney shall have the right to counsel, to be heard in his own defense, and to present evidence and witnesses in his behalf.

"(c) After such hearing, the court shall enter an order dismissing the matter or imposing discipline upon such attorney in the form of suspension for a period of time, disbarment, or such other discipline as the court deems appropriate. If the court suspends the attorney, the period of suspension shall be not less than seven years for conviction of a class A felony and not less than five years for conviction of a class B felony.

"(d) Whenever the court enters an order disciplining an attorney under this section, it may appoint a trustee, under the rules of court, to protect the interests of the disciplined attorney and his clients."

the case for a new hearing limited to a determination of the appropriate length of the suspension, which, pursuant to § 51-91a, could not be less than five years. Id.

We granted the defendant's petition for certification as to the following issues: "1. Did the Appellate Court properly conclude that General Statutes § 51-91a should be applied to attorneys convicted of felonies in federal courts or other states' courts? 2. In light of the judiciary's power over the practice of law, does the application of § 51-91a in this case violate the separation of powers doctrine? [and] 3. Did the Appellate Court properly conclude that Practice Book [§§ 2-40 and 2-41] do not provide guidance for the disposition of this case?" *Statewide Grievance Committee* v. *Spirer,* 243 Conn. 959, 959–60, 705 A.2d 552 (1998). Pursuant to Practice Book § 84-11,[6] formerly § 4140, the plaintiff advanced two alternative grounds for affirming the Appellate Court's decision: (1) "[t]he trial court abused its discretion in concluding that a suspension from the practice of law for a period of only six months was sufficient discipline of an attorney convicted in [f]ederal [c]ourt of the commission of two felonies"; and (2) the trial court abused its discretion in concluding that a six month suspension "was sufficient discipline for an attorney, who, in addition to being convicted of aiding and abetting bank fraud, admitted during his presentment hearing that he misrepresented to the [f]ederal [c]ourt that he was guilty of the felonies with which he was charged only so the court would accept his guilty plea and not because he agreed, as he said he did, that he was guilty of the crimes charged."

As to the first certified issue, we conclude that the Appellate Court improperly concluded that § 51-91a

---

[6] Practice Book § 84-11 provides in relevant part: "(a) Upon the granting of certification, the appellee may present for review alternative grounds upon which the judgment may be affirmed provided those grounds were raised and briefed in the appellate court. . . ."

applies to attorneys convicted of felonies in federal court or courts of other states. In light of this conclusion, we need not address the second certified issue, that is, whether application of § 51-91a to a case such as the present one violates the separation of powers doctrine. As to the third certified issue, we conclude that Practice Book § 2-41 itself provides express authority for the disposition of this case. Consequently, we conclude that the Appellate Court improperly concluded that Practice Book §§ 2-40 and 2-41 provided insufficient guidance to resolve this case. With regard to the plaintiff's alternative grounds for affirmance, we conclude that the trial court did not abuse its discretion.

I

Before beginning our analysis of the certified issues, we review the well established principles governing disciplinary actions against attorneys.[7] "Attorney disciplinary proceedings 'are for the purpose of preserving

---

[7] "The professional rights and obligations of attorneys practicing within Connecticut are governed by the Rules of Professional Conduct, adopted by the judges of the Superior Court in 1986. *Matza* v. *Matza*, 226 Conn. 166, 175, 627 A.2d 414 (1993). Rule 8.4 of the Rules of Professional Conduct, which enumerates proscribed attorney conduct, provides in relevant part: 'MISCONDUCT

" 'It is professional misconduct for a lawyer to:

" '[1] Violate or attempt to violate the Rules of Professional Conduct [knowingly assist or induce another to do so, or do so through the acts of another;]

" '[2] Commit a criminal act that reflects adversely on the lawyer's honesty, trustworthiness or fitness as a lawyer in other respects;

" '[3] Engage in conduct involving dishonesty, *fraud*, deceit or misrepresentation . . . .'

"In addition, the comment to rule 8.4, which serves as a guide for compliance with that rule, provides in relevant part: 'Many kinds of illegal conduct reflect adversely on fitness to practice law, such as offenses involving *fraud* . . . . Although a lawyer is personally answerable to the entire criminal law, a lawyer should be professionally answerable only for offenses that indicate lack of those characteristics relevant to law practice. Offenses involving violence, dishonesty, breach of trust, or serious interference with the administration of justice are in that category. . . .' Rules of Professional

the courts of justice from the official ministration of persons unfit to practise in them.'" *Statewide Grievance Committee* v. *Shluger*, 230 Conn. 668, 674, 646 A.2d 781 (1994), quoting *Ex parte Wall*, 107 U.S. 265, 288, 2 S. Ct. 569, 27 L. Ed. 552 (1883); *Statewide Grievance Committee* v. *Rozbicki*, 211 Conn. 232, 238, 558 A.2d 986 (1989). "An attorney as an officer of the court in the administration of justice, is continually accountable to it for the manner in which he exercises the privilege which has been accorded him. His admission is upon the implied condition that his continued enjoyment of the right conferred is dependent upon his remaining a fit and safe person to exercise it, so that when he, by misconduct in any capacity, discloses that he has become or is an unfit or unsafe person to be entrusted with the responsibilities and obligations of an attorney, his right to continue in the enjoyment of his professional privilege may and ought to be declared forfeited. *In re Peck*, 88 Conn. 447, 450, 91 A. 274 (1914). Therefore, [i]f a court disciplines an attorney, it does so not to mete out punishment to an offender, but [so] that the administration of justice may be safeguarded and the courts and the public protected from the misconduct or unfitness of those who are licensed to perform the important functions of the legal profession. . . . *Statewide Grievance Committee* v. *Botwick*, 226 Conn. 299, 307, 627 A.2d 901 (1993)." (Internal quotation marks omitted.) *Massameno* v. *Statewide Grievance Committee*, 234 Conn. 539, 554–55, 663 A.2d 317 (1995), citing *Statewide Grievance Committee* v. *Shluger*, supra, 674–75.

## A

With these overarching principles in mind, we turn to the first certified issue in this appeal, that is, whether

Conduct 8.4, comment." (Emphasis added.) *Statewide Grievance Committee* v. *Shluger*, 230 Conn. 668, 674 n.11, 646 A.2d 781 (1994).

the Appellate Court properly concluded that § 51-91a should be applied to attorneys convicted of felonies in federal court or courts of other states. We conclude that the Appellate Court's determination was improper.

When interpreting a statute, we are guided by well established tenets of statutory construction. "[O]ur fundamental objective is to ascertain and give effect to the apparent intent of the legislature . . . . In seeking to discern that intent, we look to the words of the statute itself, to the legislative history and circumstances surrounding its enactment, to the legislative policy it was designed to implement, and to its relationship to existing legislation and common law principles governing the same general subject matter." (Internal quotation marks omitted.) *Office of Consumer Counsel* v. *Dept. of Public Utility Control*, 246 Conn. 18, 29, 716 A.2d 78 (1998).

This appeal presents us with an unusual situation in that the defendant and the plaintiff agree that the legal underpinnings of the Appellate Court's opinion are flawed. The defendant claims that § 51-91a applies only to felony convictions in Connecticut state courts and, therefore, that the Appellate Court improperly relied on its mandate in deciding that the trial court was required to suspend the defendant for at least five years. The plaintiff concedes that to the extent that the Appellate Court deemed reliance on § 51-91a to be mandatory, its decision is incorrect "because the statute can only be construed to (1) represent an effort by the legislature to exercise a power which lies exclusively under the control of the courts or (2) establish a significant interference with the orderly conduct of the Superior Court's judicial functions." The plaintiff maintains, however, that although the use of § 51-91a should not be deemed mandatory, it is not unreasonable to conclude that the Appellate Court, pursuant to its inherent authority to

regulate attorney conduct, properly adopted the statute's legislatively created guidelines. Without passing on the constitutionality of § 51-91a, we conclude that the Appellate Court's reliance on that statute was improper.

The Appellate Court correctly noted that § 51-91a, "on its face, applies only to felony convictions in state court because it provides that '[a]fter sentencing an attorney who has been convicted of a felony, the court shall hold a hearing on the issue of the eligibility of such attorney to continue in the practice of law in this state.' Thus, the statutory language contains an assumption that the court that convicts the attorney is the same one that sanctions him, which would not be the case if an attorney was convicted in federal court or in another state." *Statewide Grievance Committee* v. *Spirer*, supra, 46 Conn. App. 454–55. Moreover, the first sentence of subsection (a) of § 51-91a, as quoted by the Appellate Court, imposes on the sentencing court the duty to determine the attorney's fitness to continue the practice of law "in this state." Only a Connecticut court is empowered to make such a determination. Therefore, according to its plain language, § 51-91a applies only to felony convictions in a Connecticut state court.[8]

---

[8] The inapplicability of § 51-91a is further demonstrated by the Appellate Court's attempts to analogize Connecticut's crime classification scheme to that of the federal court system. As the court noted, § 51-91a "is written in terms of felonies as classified in Connecticut. Although an alphabetical designation of felonies exists in both Connecticut and the federal system, the prison terms for the classes of felonies vary between the two sentencing authorities." *Statewide Grievance Committee* v. *Spirer*, supra, 46 Conn. App. 461–62. Additionally, the court noted that "[b]ecause bank fraud and the deception involving the Department of Housing and Urban Development are federal in nature, [the court was] unable to equate them with Connecticut crimes." Id., 462 n.8. Nevertheless, the court crafted a method to compare the crimes, using length of imprisonment as a "conversion factor," choosing to consider the length of imprisonment at the time of presentment rather than at the time of the offense. Id., 462–63. We do not believe that such a complicated system should be required to determine the appropriate sanc-

Furthermore, our reading of the statute is buttressed by its legislative history. Section 51-91a, which became effective July 1, 1986, originally required that "[t]he clerk of the *superior court location in this state* in which an attorney-at-law is convicted of a felony shall transmit . . . a certificate of the conviction to the statewide grievance committee. . . ."[9] (Emphasis added.) Public Acts 1985, No. 85-456, § 9. The statute, therefore, applied to attorneys convicted of felonies in the Superior Court in this state, and there is nothing in the language of the statute as it provided at the time of its enactment to indicate that the legislature intended it to apply to attorneys convicted of felonies in federal court or courts of other states.

In 1986, in an apparent effort to simplify the disciplinary process, the legislature amended § 51-91a. Number 86-276, § 11, of the 1986 Public Acts eliminated the language requiring the committee to assign a panel to investigate the attorney in question. See footnote 9 of this opinion. Instead, the amendment required "[t]he clerk of the *superior court in this state* in which an attorney-at-law is convicted of a felony [to] transmit . . . a certificate of the conviction to the state-wide grievance committee *and to the chief attorney for presentments* . . . . *The chief attorney or his designee shall file a presentment against the attorney predicated upon the conviction.* . . ." (Emphasis added.) Public Acts 1986, No. 86-276, § 11. Therefore, after its amendment, the statute still applied to convictions in

tion to impose on an attorney convicted of a felony. Rather, the considerable amount of effort the Appellate Court devoted to this task merely demonstrates further the inapplicability of § 51-91a to the present case.

[9] The committee would assign a panel to investigate the matter and, if the panel determined that probable cause existed that the attorney in question was guilty of misconduct, the committee would either reprimand the attorney or present the attorney to the Superior Court for reprimand, suspension or disbarment. Public Acts 1985, No. 85-456, § 5 (d).

state courts without any reference to convictions in other courts.

Section 51-91a was last amended in 1988 and its language has remained unchanged since then. As previously discussed, the first sentence of § 51-91a (a) now demonstrates clearly that the trial court that sentences an attorney convicted of a felony shall subsequently hold a hearing to determine the continued eligibility of the attorney to practice law in Connecticut. In support of this most recent amendment, No. 88-277 of the 1988 Public Acts, Senator Michael P. Meotti, commenting on the Senate floor, stated: "This bill would require that in an instance in which an attorney is convicted of a felony, *the judge who has sentenced that attorney* hold a hearing within a certain time period and make a decision on whether or not the person should be disbarred, suspended from practice or not be subject to a disciplinary proceeding." (Emphasis added.) 31 S. Proc., Pt. 9, 1988 Sess., p. 3022.

In light of the ample evidence that the legislature intended the statute to apply only to convictions in state court, and the complete lack of evidence to the contrary, as well as the plain language of the statute, we conclude that § 51-91a does not apply to attorneys convicted of felonies in federal court or courts of other states. Accordingly, we hold that the Appellate Court improperly concluded that § 51-91a applied in the present case.

B

The second certified issue is whether application of § 51-91a, mandating the defendant's suspension from the practice of law for at least five years, violates the separation of powers doctrine. If the statute applied in this case, it would be proper for us to address this issue. Because we have concluded that § 51-91a is inapposite, however, we need not consider whether application of the statute constitutes an unconstitutional violation of

the separation of powers doctrine. See *Packer* v. *Board of Education*, 246 Conn. 89, 98, 717 A.2d 117 (1998) ("we ordinarily eschew unnecessary determinations of constitutional questions" [internal quotation marks omitted]).

### C

We turn now to the third certified issue, that is, whether the Appellate Court improperly concluded that Practice Book §§ 2-40 and 2-41 do not provide sufficient guidance for the disposition of this case. For the reasons that follow, we conclude that the Appellate Court's conclusion was improper.

The Appellate Court correctly noted that "[t]here is no statute or rule of practice that specifically deals with the length of suspension, if suspension is deemed the appropriate discipline by the trial court, for an attorney convicted of a felony in another jurisdiction . . . ." *Statewide Grievance Committee* v. *Spirer*, supra, 46 Conn. App. 455. Asserting that Practice Book § 2-41 provides "only for the procedural aspects of this type of case," the court perceived "a void in the statutes and rules of practice concerning such cases." Id., 455–56. The court attempted to fill this lacuna by expanding the application of § 51-91a to include felony convictions in other jurisdictions. Id., 460.

The plaintiff argues that the Appellate Court reasonably recognized a void in the rules of practice concerning cases involving attorneys convicted of felonies in other jurisdictions and that "it was not unreasonable for the Appellate Court to find [Practice Book §§ 2-40 and 2-41] inadequate in providing necessary guidance for imposing attorney discipline in felony cases." The plaintiff further claims that the fact that the trial court imposed upon the defendant a mere six month suspension in response to a conviction for a serious crime demonstrates that the rules of practice do not provide

adequate guidance to trial courts in cases such as the present one. By contrast, the defendant asserts that §§ 2-40 and 2-41, when read together, provide adequate guidance for the resolution of this case.

We disagree with the defendant that we should read §§ 2-40 and 2-41 together to determine the appropriate sanction to impose upon an attorney convicted of a felony in federal court or the court of another state. As the Appellate Court correctly noted, § 2-40 "relates to the discipline of attorneys convicted of a felony 'in this state' and specifically provides that '[a]fter [a] hearing, the judge shall enter an order dismissing the matter or imposing discipline upon such attorney in the form of suspension for a period of time, disbarment, or such other discipline as the judge deems appropriate.'" *Statewide Grievance Committee* v. *Spirer*, supra, 46 Conn. App. 457. The similarities between the rule of practice, § 2-40, and the General Statutes, § 51-91a, are manifest; compare footnotes 4 and 5 of this opinion; and we conclude that the rule of practice is no more applicable than the statute. Therefore, any reliance on § 2-40 is misplaced.

The Appellate Court stated further, however, that Practice Book § 2-41 "relates to the procedure for the discipline of attorneys convicted of felonies in jurisdictions other than in Connecticut, and, contrary to [§ 2-40], makes no mention of any sanction other than suspension or disbarment." Id. We disagree that § 2-41 provides only "for the procedural aspects of this type of case." Id., 455. Section 2-41 provides the procedural mechanism by which the statewide bar counsel shall file a presentment against an attorney convicted of a felony in a court other than a Superior Court in this state. Section 2-41, however, also has substantive application. Subsection (e) of § 2-41 expressly provides that "[t]he sole issue to be determined in the presentment proceeding shall be the extent of the final discipline to

be imposed . . . ." Furthermore, the final sentence of that subsection provides: "Whenever the court enters an order suspending or disbarring an attorney *pursuant to this section*, the court may appoint a trustee . . . to protect the client's and the attorney's interests." (Emphasis added.) The fact that a court could suspend or disbar an attorney "pursuant to" § 2-41 demonstrates clearly that the rule of practice empowers courts to sanction an attorney. Therefore, the Appellate Court's conclusion that § 2-41 merely sets forth a procedural mechanism is belied by the plain language of the rule. We appreciate the court's dissatisfaction with § 2-41 as a mechanism by which to dispose of this case because the rule mentions no sanction other than suspension or disbarment. These are, however, appropriate sanctions for an attorney convicted of a felony. Whether other sanctions should be available is a decision best left to the rules committee of the Superior Court.[10] Consequently, we conclude that the "void in the statutes and rules of practice" that the Appellate Court perceived; *Statewide Grievance Committee* v. *Spirer*, supra, 46 Conn. App. 455–56; does not, in fact, exist.

According to § 2-41, a court is vested with the authority to suspend or disbar an attorney convicted of a felony in another jurisdiction. Therefore, the trial court, in suspending the defendant for six months following his felony conviction in federal court, was acting properly in accordance with § 2-41. There was no need for

---

[10] The Appellate Court chose to address the perceived shortcomings of § 2-41 by expanding the application of § 51-91a. For the reasons we have outlined in the text of this opinion, this was improper. By contrast, the defendant urges us to import the sanctions enumerated in § 2-40 (c)—"suspension for a period of time, disbarment or such other discipline as the judge deems appropriate"—into § 2-41. As § 2-41 provides only for suspension or disbarment, our approval of the use of the sanctions listed in § 2-40 in a case such as the present one would confer broader discretion on a trial court disciplining an attorney than provided for in § 2-41. Although we recognize that such an action may carry benefits, we are constrained by the express language of § 2-41.

the Appellate Court to seek guidance from § 51-91a. Neither was there a need, as the defendant suggests, to turn to Practice Book § 2-40 for such guidance. The appropriate types of discipline to impose in a case such as this, as well as the basis for the court's authority to impose such discipline, are found expressly in § 2-41, our state's only rule or statute addressing the discipline of an attorney convicted of a felony in another jurisdiction. We hold, therefore, that a court faced with the task of disciplining an attorney in a case like the present one may properly suspend or disbar the attorney, pursuant to § 2-41.[11]

## II

We consider next the plaintiff's alternative grounds for affirming the Appellate Court's decision, both of which assert that the trial court abused its discretion. Specifically, the plaintiff claims that the trial court abused its discretion: (1) by suspending the defendant from the practice of law for a period of only six months, following the defendant's conviction of two felonies in federal court; and (2) "in concluding that a suspension from the practice of law for a period of only six months was sufficient discipline for an attorney who, in addition

---

[11] In support of its use of § 51-91a, the Appellate Court asserted that "[t]o hold that an attorney convicted of a federal felony could not be disciplined in a manner similar to that delineated by § 51-91a because of the absence of a statute or rule dealing with convictions of felonies in other jurisdictions would create an inconsistent body of law, and would violate public policy." *Statewide Grievance Committee* v. *Spirer*, supra, 46 Conn. App. 460. Our conclusion that a trial court should discipline an attorney convicted of a felony in federal court or another state's court in accordance with Practice Book § 2-41 does not mean that such an attorney could not be disciplined with the same sanctions that § 51-91a mandates. It is within the sound discretion of a trial court to impose such sanctions if it deems such a result to be just. In other words, the mere fact that the sanctions enumerated in § 2-41 vest the trial court with more discretion than § 51-91a would, does not lead to the conclusion that a court is not empowered to impose sanctions that rise to the level of those listed in § 51-91a if the court so chooses.

to being convicted of aiding and abetting bank fraud, admitted misrepresentations made to the federal court for an ulterior purpose."

Before addressing the merits of the plaintiff's claims, we note that a trial court faced with an attorney found guilty of misconduct has the "inherent judicial power, derived from judicial responsibility for the administration of justice, to exercise sound discretion to determine what sanction to impose in light of the entire record before it. . . . Long ago, we stated that courts are, as they should be, left free to act as may in each case seem best in this matter of most important concern to them and to the administration of justice. . . . [W]e recognize the seriousness of the interests that we must safeguard. We have a continuing duty to make it entirely clear that the standards of conduct, nonprofessional as well as professional, of the members of the profession of the law in Connecticut have not changed, and that those standards will be applied under our rules of law, in the exercise of a reasonable discretion . . . ." (Citations omitted; internal quotation marks omitted.) *Statewide Grievance Committee* v. *Shluger*, supra, 230 Conn. 678–79.

We note that it is not for us to decide whether, under the circumstances of this case, we would have imposed a harsher sanction on the defendant. Rather, our inquiry is limited to whether the trial court abused its discretion in imposing a six month suspension. "The scope of review by this court on a claim that the trial court abused its discretion is well settled. [E]very reasonable presumption should be given in favor of the correctness of the court's ruling. . . . Reversal is required only where an abuse of discretion is manifest or where injustice appears to have been done. . . . *Suffield Bank* v. *Berman*, 228 Conn. 766, 783, 639 A.2d 1033 (1994)."

(Internal quotation marks omitted.) *Higgins* v. *Karp*, 239 Conn. 802, 808, 687 A.2d 539 (1997).

## A

We turn now to the plaintiff's first alternative ground for affirmance. The plaintiff claims that the trial court abused its discretion by concluding that a six month suspension from the practice of law was sufficient discipline of an attorney convicted of two federal felonies. The defendant asserts that the imposition of the six month suspension was within the trial court's discretion. We agree with the defendant.

The trial court's memoranda of decision[12] set forth clearly the reasoning underlying the court's decision. The court noted that to aid in the task of "evaluating [a] defendant's character, integrity and fitness to practice law in order to determine the sanction to impose against him"; *Statewide Grievance Committee* v. *Shluger*, supra, 230 Conn. 677; Connecticut courts have been guided by the American Bar Association's Standards for Imposing Lawyer Sanctions (Standards).[13] Id., 673 n.10. The Standards provide that, " 'after a finding of lawyer misconduct, a court should consider the following factors: (a) the duty violated; (b) the lawyer's mental state; and (c) the potential or actual injury caused by the lawyer's misconduct; and (d) the existence of aggravating or mitigating factors' " Id., quoting

---

[12] The trial court issued a memorandum of decision on February 27, 1996, suspending the defendant from the practice of law for six months. The court issued a supplemental memorandum of decision on March 12, 1996, in which the court set forth more completely the reasons supporting its decision.

[13] In *Shluger*, we noted that "[t]he Standards, originally promulgated in 1986, have not formally been adopted by the judges of this state." *Statewide Grievance Committee* v. *Shluger*, supra, 230 Conn. 673 n.10. In that case, however, both parties relied on the Standards and we addressed the defendant's abuse of discretion argument in terms of aggravating and mitigating factors, as suggested by the Standards, without citing to specific standards.

As in *Shluger*, both parties in the present case relied on the Standards. As previously noted, the trial court also cited to them.

§ 3.0 of the Standards. Additionally, the Standards provide numerous examples of aggravating and mitigating factors that a trial court might take into consideration.[14]

In its original memorandum of decision, the trial court stated that it had "considered the briefs of both parties, heard and reviewed all the evidence presented by the [plaintiff], all of the testimony of the [defendant], and his witnesses, and the documentary evidence presented by the [defendant] including numerous letters from disinterested parties attesting to his good character and integrity." With respect to mitigating circumstances, in its supplemental memorandum of decision, the court noted that during the same time period in which the ethical transgressions had occurred, the defendant's wife was suffering from terminal cancer, which eventually claimed her life. The defendant had to care for his ailing wife while attending to the welfare of their young son. Additionally, the defendant's "burgeoning litigation practice . . . was beginning to overwhelm him."

---

[14] The Standards provide in relevant part: "9.1 Generally. After misconduct has been established, aggravating and mitigating circumstances may be considered in deciding what sanction to impose. 9.2 Aggravation. 9.21 Definition. Aggravation or aggravating circumstances are any considerations, or factors that may justify an increase in the degree of discipline to be imposed. 9.22 Factors which may be considered in aggravation. Aggravating factors include: (a) prior disciplinary offenses; (b) dishonest or selfish motive; (c) a pattern of misconduct; (d) multiple offenses; (e) bad faith obstruction of the disciplinary proceeding by intentionally failing to comply with rules or orders of the disciplinary agency; (f) submission of false evidence, false statements, or other deceptive practices during the disciplinary process . . . . 9.3 Mitigation. 9.31 Definition. Mitigation or mitigating circumstances are any considerations or factors that may justify a reduction in the degree of discipline to be imposed. 9.32 Factors which may be considered in mitigation. Mitigating factors include: (a) absence of a prior disciplinary record; (b) absence of a dishonest or selfish motive; (c) personal or emotional problems; (d) timely good faith effort to make restitution or to rectify consequences of misconduct; (e) full and free disclosure to disciplinary board or cooperative attitude toward proceedings; (f) inexperience in the practice of law; (g) character or reputation . . . (j) interim rehabilitation in disciplinary proceedings; (k) imposition of other penalties or sanctions; (*l*) remorse; [and]

The plaintiff contends that the trial court did not give proper weight to the volitional element of the offenses of which the defendant had been convicted. The plaintiff argues that, because the mens rea elements of 18 U.S.C. §§ 1344 (a) and 2 (b) are, respectively, "knowingly" and "wilfully," the trial court abused its discretion by characterizing the defendant's misconduct as "allow[ing] the representation to go forward without taking any further action to prohibit the unethical and criminal conduct." We note again that the trial court stated that it had considered all the evidence, which necessarily would have included the nature of the felony of which the defendant had been convicted. Moreover, approximately four of the five and one-half substantive pages of the supplemental memorandum of decision are devoted to a discussion of the attorney's involvement in the illicit transactions, the defendant's punishment in federal court, the defendant's ethical obligations, and the manner in which the defendant had failed to meet those obligations. Accordingly, we perceive no basis upon which to conclude that the court did not factor into its deliberations the nature of the defendant's offenses.

Additionally, the plaintiff argues that, although the trial court made reference to the aggravating and mitigating provisions of the Standards, the court made no reference to the standards that are most relevant to the defendant's crimes. According to the plaintiff, the court should have considered standard 5.11,[15] which enumerates the circumstances in which disbarment is appro-

(m) remoteness of prior offenses." (Internal quotation marks omitted.) *Statewide Grievance Committee* v. *Shluger*, supra, 230 Conn. 673 n.10.

[15] Standard 5.11 provides: "Disbarment is generally appropriate when: (a) a lawyer engages in serious criminal conduct a necessary element of which includes intentional interferences with the administration of justice, false swearing, misrepresentation, fraud, extortion, misappropriation, or theft; or the sale, distribution or importation of controlled substances; or the intentional killing of another; or an attempt or conspiracy or solicitation of another to commit any of these offenses; or (b) a lawyer engages in any other

priate, and standard 5.12,[16] which describes conduct that warrants an attorney's suspension. The plaintiff maintains that, "[c]learly, consideration of these provisions of the Standards, of which there is no mention by the trial court, would have led to the inescapable conclusion that the criminal felony conviction of [the defendant] warranted a longer suspension." We disagree.

The fact that the trial court did not mention these particular standards does not lead inexorably to the conclusion that the court did not consider them. As previously noted, the court's memoranda of decision clearly demonstrate that the court turned to the Standards for guidance in determining the appropriate sanction to impose upon the defendant. We cannot conclude, based upon the mere absence of reference to a particular standard, that the court did not consider all relevant standards to determine which should bear upon the issue of the proper disciplinary action to take in this case.

Additionally, we note that nothing in the two standards cited by the plaintiff provides that disbarment or suspension is mandatory in the circumstances articulated therein. Rather, these standards provide that disbarment or suspension "is generally appropriate" if an attorney is guilty of the misconduct described in them.

Finally, we note that the trial court's decision is not inconsistent with our case law. For example, in the cases of the defendant's law partners involved in the same transactions that lie at the heart of this case, the trial court imposed six month suspensions. *Statewide*

---

intentional conduct involving dishonesty, fraud, deceit, or misrepresentation that seriously adversely reflects on the lawyer's fitness to practice."

[16] Standard 5.12 provides: "Suspension is generally appropriate when a lawyer knowingly engages in criminal conduct which does not contain the elements listed in Standard 5.11 and that seriously adversely reflects on the lawyer's fitness to practice."

*Grievance Committee* v. *Marcus*, Superior Court, judicial district of Fairfield, Docket No. CV0329709S (April 26, 1996); *Statewide Grievance Committee* v. *Nasser*, Superior Court, judicial district of Fairfield, Docket No. CV0329710S (April 26, 1996). In a case involving one of the defendant's associates, who had pleaded guilty to a federal felony in connection with these same transactions, the Appellate Court affirmed the trial court's issuance of a reprimand. *Statewide Grievance Committee* v. *Glass*, 46 Conn. App. 472, 484, 699 A.2d 1058 (1997); see also *In re Weissman*, 203 Conn. 380, 384–85, 524 A.2d 1141 (1987) (no abuse of discretion in case in which trial court imposed one month suspension of attorney convicted in federal court of misdemeanor of wilfully failing to file federal income tax return); *Statewide Grievance Committee* v. *Bennett*, Superior Court, judicial district of Ansonia-Milford, Docket No. CV960055198S (August 30, 1996) (respondent, who pleaded guilty to money laundering in violation of 18 U.S.C. § 1957, suspended for three months); *Statewide Grievance Committee* v. *Hoffman*, Superior Court, judicial district of Stamford-Norwalk at Stamford, Docket No. CV940138427 (August 24, 1994) (defendant pleaded guilty in federal court to misdemeanor, "accessory after the fact" to bank fraud, in violation of 18 U.S.C. § 3; trial court determined that "a reprimand [would] suffice to protect the public and the administration of justice").

In light of the foregoing, we find the plaintiff's argument unpersuasive.[17] We therefore reject the plaintiff's first alternative ground for affirmance.

---

[17] The plaintiff also asserts that the trial court "apparently did not consider or distinguish cases cited to it involving criminal convictions similar to that of [the defendant]." The first case cited by the plaintiff is *Statewide Grievance Committee* v. *Cecil*, Superior Court, judicial district of Hartford-New Britain at Hartford, Docket No. CV92519300 (January 21, 1993), which involved an attorney's falsifying a HUD-1 statement in a Swiss Conservative Group transaction. Additionally, the plaintiff cited cases from other jurisdictions. The trial court's failure to distinguish cases cited by the plaintiff, however, is not grounds for a conclusion of abuse of discretion. Moreover, there is

## B

We consider next the plaintiff's second alternative ground for affirming the Appellate Court's decision, that is, that "[t]he trial court abused its discretion in concluding that a suspension from the practice of law for a period of only six months was sufficient discipline for an attorney who, in addition to being convicted of aiding and abetting bank fraud, admitted misrepresentations made to the federal court for an ulterior purpose."[18] Citing rule 3.3 of the Rules of Professional Conduct, which requires attorney candor toward the tribunal, and standard 6.11, which provides that "[d]isbarment is generally appropriate when a lawyer, with

no reason to conclude that the aggravating and mitigating factors in those cases were similar to those existing in the present case. The trial court in the present case, considering all the evidence before it, including the relevant aggravating and mitigating circumstances, deemed a six month suspension to be appropriate. We are unwilling to find an abuse of discretion based on a failure to distinguish cases that might not be similar enough to warrant such attention.

[18] During the presentment hearing, on cross-examination of the defendant, the following exchange took place:

"Q. You testified, I believe, that to get through the hearing on your guilty plea, you said what I read from the transcript earlier what was written out for you, is that correct?

"A. That's correct.

"Q. Does what you stated in federal court accurately reflect what you did?

"A. I agree that I went to meetings. We talked about them today. That I reviewed documents. We talked about that today. Edited documents, I mean, I edited them to the extent that I said, you know, this is a document that really needs some work.

"Q. So when you said to the federal court that you edited documents, you didn't mean that you took the documents and you reworked them, reworded them?

"A. No. I never did that. . . .

"Q. And you said, 'I further knew that HUD-1s would have to be prepared that would contain material misrepresentations at the time of the closing.' Is that what you knew?

"A. No.

"Q. So, you misrepresented to the United States District Court on April 24 of this year what you actually knew in order for the court to accept a guilty plea, is that correct?

the intent to deceive the court, makes a false statement" the plaintiff claims that "[t]he failure of the trial court to even address [the defendant's] admitted misrepresentation to the federal court, and to take it into consideration in imposing discipline, was error." We are not persuaded.

We reiterate that the mere absence of a specific reference in the trial court's memoranda—here, to the defendant's misrepresentation in federal court—does not demonstrate conclusively that the trial court failed to consider that misrepresentation. Much of our discussion in part II A of this opinion is equally applicable here. Moreover, as discussed previously, the trial court stated that it considered "*all* the evidence presented by the [plaintiff]" (emphasis added), as well as that presented by the defendant, in reaching its decision. The trial court had access to the transcripts of the defendant's testimony before the federal court. Therefore, according to the trial court, the court *did* take into consideration the misrepresentation, even though it did not make reference to it in its memoranda of decision. Consequently, we find the plaintiff's arguments unpersuasive and reject the plaintiff's second alternative ground for affirmance.

### III

As we noted previously, it is not the function of this court to determine the sanction we would have imposed on the defendant if faced with that task. Rather, we must determine whether the trial court abused its discretion in imposing a six month sentence under the circumstances of this case. The court considered all pertinent evidence, including relevant aggravating and mitigating factors. It considered both the gravity of the defendant's misconduct and the tragedy and human

---

"A. Effectively, yes. I think the word I said is I should have known and I misspoke on that and I apologize for the omission."

frailties that contributed to that misconduct. In light of the broad discretion traditionally afforded to courts in matters of attorney discipline, we cannot conclude that the evidence before the trial court did not support that court's decision. Although the serious nature of the defendant's conduct makes this a close case, faithful adherence to the abuse of discretion standard compels us to conclude that the trial court acted within its discretion in suspending the defendant from the practice of law for a period of six months.

The judgment of the Appellate Court is reversed and the case is remanded to that court with direction to affirm the judgment of the trial court.

In this opinion CALLAHAN, C. J., and BORDEN and PALMER, Js., concurred.

MCDONALD, J., dissenting. In this case, the defendant was convicted of felony bank fraud in federal court under 18 U.S.C. § 1344. Because of the defendant's continuing and prolonged criminal conduct, a federally insured bank lost $75,000. The trial court nonetheless suspended the defendant from the practice of law for only six months.

Although I agree with the majority that a minimum suspension of five years was not mandated, as the majority of the Appellate Court had concluded; *State-wide Grievance Committee* v. *Spirer*, 46 Conn. App. 450, 466, 699 A.2d 1047 (1997); a penalty more akin to such a suspension is clearly indicated. I agree with Judge Spear's concurrence in the Appellate Court that a suspension much longer than six months is required in this case. See id., 471 (*Spear, J.*, concurring in part and dissenting in part). The sanction imposed by the trial court was clearly inappropriate, was inadequate to deter misconduct and would lower public confidence in our profession. Accordingly, I believe there was an abuse of discretion.

I would, as Judge Spear urged, remand the case to the trial court for the imposition of a suspension "commensurate with the gravity of the criminal conduct of the defendant." Id. (*Spear, J.,* concurring in part and dissenting in part).

Accordingly, I respectfully dissent.