******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion. In no event will any such motions be accepted before the "officially released" date.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the electronic version of an opinion and the print version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest print version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears on the Commission on Official Legal Publications Electronic Bulletin Board Service and in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

DISCIPLINARY COUNSEL *v.* ROBERT
SERAFINOWICZ
(AC 36489)

Sheldon, Keller and Mullins, Js.

*Argued April 16—officially released September 22, 2015*

(Appeal from Superior Court, judicial district of
Waterbury, Agati, J.)

*Brittany B. Paz*, with whom, on the brief, was *Norman A. Pattis*, for the appellant (defendant).

*Desi Imetovski*, assistant chief disciplinary counsel,
with whom was *Suzanne B. Sutton*, first assistant chief

disciplinary counsel, for the appellee (plaintiff).

*Opinion*

SHELDON, J. In this presentment filed by the plaintiff, Disciplinary Counsel, alleging misconduct by the defendant, Attorney Robert Serafinowicz, the defendant appeals from the judgment of the trial court suspending him from the practice of law for violating rules 8.2 (a) and 8.4 (4) of the Rules of Professional Conduct as a result of having made statements of fact known to be false, or with reckless disregard for the truth, concerning the qualifications or integrity of a judge and for engaging in conduct prejudicial to the administration of justice. On appeal, the defendant claims that (1) the trial court abused its discretion when it suspended him from the practice of law for a period of 120 days for his admitted conduct; and (2) he was disciplined for protected speech in violation of the first amendment. We affirm the judgment of the trial court.

The record discloses the following relevant facts and procedural history. The defendant is a practicing criminal defense attorney who was admitted to the bar in this state in 2004. In September, 2011, the defendant represented a Derby Middle School employee in a pretrial disposition before Judge Burton Kaplan in the geographical area number five courthouse in Derby. The case, which involved the alleged commission of certain narcotics related offenses on school property, generated substantial media interest and publicity.

On September 20, 2011, the defendant filed a complaint with the Judicial Review Council (Judicial Review) against Judge Kaplan, alleging bias. On September 28, 2011, the defendant filed a motion to recuse Judge Kaplan in the pending case against the Derby Middle School employee, citing as the basis for the motion the filed complaint against Judge Kaplan and the potential conflict arising therefrom. On September 29, 2011, Judicial Review returned the complaint to the defendant by letter, indicating that additional information was needed to process it. The defendant did not timely submit the information requested, and as a result, the complaint was not processed. Thereafter, the defendant appeared before Judge Kaplan on five occasions over a period of several months.

On February 8, 2012, the defendant disclosed to a local online media outlet that he had filed a complaint against Judge Kaplan. Shortly thereafter, on February 28, 2012, the defendant appeared before Judge Kaplan and claimed his motion to recuse. At the outset of the hearing, Judge Kaplan noted that he had made inquiries about the stated basis for the recusal motion—the complaint against him that had allegedly been filed with Judicial Review—and had been informed that the complaint had been returned as incomplete. Judge Kaplan further stated that the defendant had appeared before him on five occasions, subsequent to filing the motion

to recuse, and had not claimed the motion or indicated that there was a potential conflict. On that subject, Judge Kaplan stated: "I don't know how you can file a motion, tell the clerk not to claim it, know that the complaint has been returned, and not amend or withdraw your motion that makes reference to a complaint that didn't exist." Thereafter, Judge Kaplan denied the recusal motion, but recused himself sua sponte.

Immediately following the hearing, the defendant gave a statement to the press on the steps of the Derby courthouse in which he made several disparaging remarks about Judge Kaplan. His comments were videotaped and later publicly disseminated. The defendant stated, inter alia: "The man's a disgrace to the bench. He shouldn't be sitting on the bench. It's clear . . . very clear that the man does not give people a fair shake, it's clear that he plays favorites. There's certain lawyers that he likes and certain lawyers that he doesn't. . . . In case you didn't notice, he didn't like the fact that the media became involved in this because once the media becomes involved, his veil of secrecy which allows judges to do whatever they want all of a sudden goes away to somewhere else, all of a sudden disappears. . . . I filed that motion to preserve my client's rights because I saw what was the most egregious act of judicial conduct that I will ever see in my career. He talks about that's not the way to practice law. That man's never tried a case in his life. Compare my trial record to his, his is zero and zero, look what mine is, not losing a case since 2007. . . .

"[Judge Kaplan] obviously had something against [my client], and I wasn't going to stand there and I wasn't going to take it. When I raised my right hand to take that oath and say I was going to be a lawyer, I vowed that I was going to represent every one of my clients to the best of my ability and I'm going to do that. Prior to this case even being docketed for the first time, he [Judge Kaplan] gave an opinion on the case, which he's not supposed to do. That is unacceptable and—now, at least, we're going to have a judge who's going to have a fair and open mind and give this person a fair shake because it's clear that he was not going to get one in this courthouse. And as I said before, the man's a disgrace to the bench. Everyone within the state of Connecticut should have a problem with their tax dollars going to pay his salary."

Subsequent to the defendant's statement to the press, the plaintiff filed a grievance complaint against the defendant, alleging, inter alia, violations of Rules of Professional Conduct 8.2 (a)[1] and 8.4 (4).[2] The defendant tendered an admission of the misconduct, denying some or all of the material facts, but acknowledging that there was sufficient evidence to prove such material facts by clear and convincing evidence.[3] Pursuant to Practice Book § 2-82 (c), the matter was submitted

to the court for imposition of sanctions.[4] A hearing was held on December 2, 2013, at which time the court heard evidence relating to the defendant's videotaped statements to the press, and heard arguments from the parties on the appropriate imposition of sanctions. The defendant presented mitigation evidence, including the testimony of a character witness, Attorney John R. Williams, and letters from members of the community, attesting to his character and capabilities as a lawyer. The defendant was given the opportunity to allocute, and he expressed his regret over his conduct, which he acknowledged was "unprofessional" and "unacceptable." The plaintiff sought the suspension of the defendant's license to practice law for a period of five years. The defendant, in turn, argued that suspension was not the appropriate disposition. Thereafter, the court rendered its decision, imposing a 120 day period of suspension. It further ordered that the defendant attend a continuing legal education course on legal ethics and professional responsibility. This appeal followed.

## I

The defendant first claims that the court abused its discretion in imposing sanctions.[5] More specifically, the defendant argues that the court improperly weighed certain aggravating factors and failed to accord sufficient weight to mitigation evidence demonstrating his good character. The defendant further argues that the 120 day period of suspension is excessive when compared to sanctions imposed in other cases involving more egregious conduct than that at issue in his case. The defendant's arguments are without merit.

At the outset, we set forth the applicable legal principles. "The Superior Court possesses inherent authority to regulate attorney conduct and to discipline the members of the bar. . . . The judiciary has the power to admit attorneys to practice and to disbar them . . . to fix the qualifications of those to be admitted . . . and to define what constitutes the practice of law. . . . In the exercise of its disciplinary power, the Superior Court has adopted the Code of Professional Responsibility [now the Rules of Professional Conduct]." (Internal quotation marks omitted.) *Chief Disciplinary Counsel* v. *Rozbicki*, 150 Conn. App. 472, 478, 91 A.3d 932, cert. denied, 314 Conn. 931, 102 A.3d 83 (2014). "Disciplinary proceedings are for the purpose of preserving the courts from the official ministration of persons unfit to practice in them." (Internal quotation marks omitted.) *Ex parte Wall*, 107 U.S. 265, 288, 2 S. Ct. 569, 27 L. Ed. 552 (1883). "Therefore, [i]f a court disciplines an attorney, it does so not to mete out punishment to an offender, but [so] that the administration of justice may be safeguarded and the courts and the public protected from the misconduct or unfitness of those who are licensed to perform the important functions of the legal profession." (Internal quotation marks

omitted.) *Statewide Grievance Committee* v. *Burton*, 88 Conn. App. 523, 531, 871 A.2d 380 (2005), aff'd, 282 Conn. 1, 917 A.2d 966 (2007).

"The trial court possesses inherent judicial power, derived from judicial responsibility for the administration of justice, to exercise sound discretion to determine what sanction to impose in light of the entire record before it. . . . It is well established that in sanctioning an attorney for violations of the Rules of Professional Conduct, courts are, as they should be, left free to act as may in each case seem best in this matter of most important concern to them and to the administration of justice. . . . Whether this court would have imposed a different sanction is not relevant. Rather, we must determine whether the trial court abused its discretion in determining the nature of the sanction. . . . We may reverse the court's decision [in sanctioning an attorney] only if that decision was unreasonable, unconscionable or arbitrary, and was made without proper consideration of the facts and law pertaining to the matter submitted." (Citations omitted; internal quotation marks omitted.) *Statewide Grievance Committee* v. *Egbarin*, 61 Conn. App. 445, 459–60, 767 A.2d 732, cert. denied, 255 Conn. 949, 769 A.2d 64 (2001).

"Courts considering sanctions against attorneys measure the defendant's conduct against the rules. Although the rules define misconduct, they do not provide guidance for determining what sanctions are appropriate. . . . Connecticut courts reviewing attorney misconduct, therefore, have consulted the American Bar Association's Standards for Imposing Lawyer Sanctions [ABA standards] . . . . Although the [ABA] standards have not been officially adopted in Connecticut, they are used frequently by the Superior Court in evaluating attorney misconduct and in determining discipline, as they were by the court here." (Citations omitted; internal quotation marks omitted.) *Statewide Grievance Committee* v. *Fountain*, 56 Conn. App. 375, 381, 743 A.2d 647 (2000). "[A]fter a finding of misconduct, a court should consider: (1) the nature of the duty violated; (2) the attorney's mental state; (3) the potential or actual injury stemming from the attorney's misconduct; and (4) the existence of aggravating or mitigation factors." *Burton* v. *Mottolese*, 267 Conn. 1, 55, 835 A.2d 998 (2003), cert. denied, 541 U.S. 1073, 124 S. Ct. 2422, 158 L. Ed. 2d 983 (2004).

The aggravating factors include: "(a) prior disciplinary offenses; (b) dishonest or selfish motive; (c) a pattern of misconduct; (d) multiple offenses; (e) bad faith obstruction of the disciplinary proceeding by intentionally failing to comply with rules or orders of the disciplinary agency; (f) submission of false evidence, false statements, or other deceptive practices during the disciplinary process; (g) refusal to acknowledge wrongful

nature of conduct; (h) vulnerability of victim; (i) substantial experience in the practice of law; [and] (j) indifference to making restitution." (Internal quotation marks omitted.) Id. The mitigation factors include: "(a) absence of a prior disciplinary record; (b) absence of a dishonest or selfish motive; (c) personal or emotional problems; (d) timely good faith effort to make restitution or to rectify consequences of misconduct; (e) full and free disclosure to disciplinary board or cooperative attitude toward proceedings; (f) inexperience in the practice of law; (g) character or reputation; (h) physical or mental disability or impairment; (i) delay in disciplinary proceedings; (j) interim rehabilitation; (k) imposition of other penalties or sanctions; (l) remorse; [and] (m) remoteness of prior offenses." (Internal quotation marks omitted.) Id., 55–56.

In the present case, the trial court noted that its purpose in imposing sanctions was not to punish the defendant, but to "preserve public respect for our judiciary by protecting it from unwarranted and inappropriate attacks." The court further noted that the defendant's publicized comments against Judge Kaplan were baseless. In making its determination that a period of suspension was appropriate given the conduct at issue, the court took into account the aggravating factors, namely, what it perceived as the defendant's dishonest or selfish motive in attacking Judge Kaplan and the pattern of misconduct. The court also considered the mitigating factors, including, "[the] absence of [a] prior disciplinary record, [the defendant's] cooperative attitude toward the disciplinary proceedings, and [his] expression of remorse . . . ."

The defendant contends that the court's reliance on the aggravating factors lacked a factual basis in the record, "making its punishment erroneous." The defendant, however, did not dispute the factual basis for the allegations of misconduct. Instead, he submitted an affidavit admitting that there was sufficient evidence to establish that he had violated the rules. The record demonstrates, consistent with his affidavit, that the defendant failed to withdraw his motion to recuse once it became apparent it was predicated on incorrect information. The defendant then made statements to the press questioning Judge Kaplan's motives and professional credentials while touting his own self-avowed expertise as a lawyer. While the candid criticism of lawyers aimed at bettering the administration of justice has an important place in our legal system, the intemperate statements made by the defendant in this instance served no useful purpose. Thus, notwithstanding the defendant's arguments to the contrary, there was ample support for the court's conclusion that he engaged in a pattern of misbehavior that exhibited a selfish or dishonest motive.

The defendant argues that the court failed to properly

consider the relevant mitigating evidence. Specifically, the defendant argues that the court failed to properly consider his "character and reputation," which he claims was a necessary consideration because he submitted four letters attesting to his good character and presented a character witness, Attorney Williams. This argument lacks merit. First, the court was free to reject the defendant's character evidence; and second, there is no requirement that the court set forth its express consideration of such evidence in its memorandum of decision. In fashioning the appropriate penalty in this case, the court took into account the allocution by the defendant, the absence of a prior disciplinary record, and his cooperation relative to the proceedings. Moreover, the court imposed considerably less onerous sanctions than those requested by the plaintiff, suggesting that it weighed the mitigation evidence in rendering its decision.

Last, the defendant argues that the sanctions imposed in this case constitute an abuse of the court's discretion in light of other cases involving allegedly similar conduct where a lesser penalty was imposed. Absent a showing that the trial court has acted arbitrarily, we defer to the trial court's determination of the appropriate discipline. *Statewide Grievance Committee* v. *Spirer*, 247 Conn. 762, 781, 725 A.2d 948 (1999). "[E]very reasonable presumption should be given in favor of the correctness of the court's ruling. . . . Reversal is required only where an abuse of discretion is manifest or where injustice appears to have been done." (Internal quotation marks omitted.) Id. Contrary to the defendant's argument, the imposition of sanctions should be individualized and tailored to the facts of the particular case. Indeed, the ABA standards on which the defendant relies, and which serve as a guide for imposing discipline, reflect that goal. In this case, the court concluded that a 120 day period of suspension was necessary to preserve respect for the judiciary, and to encourage the defendant and other practitioners to conduct themselves and their practice in accordance with professional standards. On the basis of the record before us, we cannot conclude that the court's imposition of a 120 day period of suspension was a clear abuse of discretion.

II

The defendant next claims that he was sanctioned for making constitutionally protected statements in violation of his first amendment rights. "Our rules of procedure do not allow a [party] to pursue one course of action at trial and later, on appeal, argue that a path he rejected should now be open to him. . . . To rule otherwise would permit trial by ambuscade." (Internal quotation marks omitted.) *Dockter* v. *Slowik*, 91 Conn. App. 448, 462, 881 A.2d 479, cert. denied, 276 Conn. 919, 888 A.2d 87 (2005). Moreover, a party relinquishes his

right to assert a constitutional violation on appeal where his previous course of action manifested an intention to abandon the claim. *Gagne* v. *Vaccaro*, 80 Conn. App. 436, 445–46, 835 A.2d 491 (2003), cert. denied, 268 Conn. 920, 846 A.2d 881 (2004). "The rule is applicable that no one shall be permitted to deny that he intended the natural consequences of his acts and conduct." (Internal quotation marks omitted.) Id. Here, the defendant not only failed to assert his constitutional argument at trial, he tendered an admission of misconduct. As a consequence, the defendant has waived his first amendment claim.

The judgment is affirmed.

In this opinion the other judges concurred.

[1] Rule 8.2 (a) of the Rules of Professional Conduct provides: "A lawyer shall not make a statement that the lawyer knows to be false or with reckless disregard as to its truth or falsity concerning the qualifications or integrity of a judge, adjudicatory officer or public legal officer, or of a candidate for election or appointment to judicial or legal office."

[2] Rule 8.4 of the Rules of Professional Conduct provides in relevant part: "It is professional misconduct for a lawyer to . . . (4) [e]ngage in conduct that is prejudicial to the administration of justice . . . ."

[3] Specifically, the defendant submitted an affidavit admitting the existence of "sufficient evidence to prove by clear and convincing evidence that [he] made statements of fact known to be false, or with reckless disregard for the truth, concerning the qualifications or integrity of a judge, and that this conduct constituted a violation of Rule 8.2 (a) of the Rules of Professional Conduct." The defendant further admitted that "there is sufficient evidence to prove by clear and convincing evidence that [he] failed to amend or withdraw [his] motion to recuse once [his] complaint to Judicial Review was returned to [him] for further information, with a letter stating that it could not be processed, and that this conduct constituted a violation of Rule 8.4 (4) of the Rules of Professional Conduct."

[4] Practice Book § 2-82 (c) provides in relevant part: "If disciplinary counsel and the respondent are unable to agree to a proposed disposition of the matter, the respondent may nonetheless tender an admission of misconduct, which shall be in accordance with subsection (a) of this section. If such an admission of misconduct without proposed disposition is tendered, disciplinary counsel shall cause it to be forwarded, together with the complaint and the record in the matter, for consideration, possible acceptance and disposition as follows: (i) by the court, in all matters involving possible suspension or disbarment, or possible imposition of a period of probation or other sanctions beyond the authority of the statewide grievance committee, as set forth in Section 2-37; or (ii) by a reviewing committee of the statewide grievance committee, in all other matters. . . ."

[5] The parties make belabored arguments concerning the factual underpinnings of the disciplinary violations in this case. This rehash of the facts and related arguments is irrelevant to our review of the claims on appeal. In light of the disposition in this case, which the court rendered on the basis of the defendant's admission of misconduct, the sole issue before this court is whether the court abused its discretion in imposing sanctions on that basis.