## FLORENCE KRONDES *v.* NORWALK SAVINGS SOCIETY
## (AC 17221)

Landau, Schaller and Dupont, Js.

Argued January 28—officially released April 27, 1999

*Arthur R. Riccio, Jr.*, for the appellant (plaintiff).

*Richard E. Castiglioni*, with whom, on the brief, was *James P. Blanchfield*, for the appellee (defendant).

*Opinion*

DUPONT, J. The plaintiff, Florence Krondes, appeals from a judgment of the trial court rendered after the court directed a verdict in favor of the defendant.[1] On appeal, the plaintiff claims that the trial court improperly (1) directed the verdict for the defendant, (2) concluded that the plaintiff's claims were barred by the

---

[1] The plaintiff also challenges the denial of her motions to set aside the verdict and for a new trial. Because we conclude that the trial court properly directed the verdict for the defendant, we do not discuss the plaintiff's motions to set aside the verdict and for a new trial. Also, we need not discuss the defendant's claim pursuant to Practice Book § 63-4 (a) (1) (A), formerly § 4013 (a) (1) (A), that we should affirm the judgment of the trial court on the alternate ground that the plaintiff could not sustain this lender liability action because she had failed to introduce evidence of any fiduciary relationship between her and the defendant.

applicable statutes of limitation, (3) concluded that the plaintiff's claims were precluded on res judicata and collateral estoppel grounds and (4) denied the plaintiff's request to have the jury polled. We affirm the judgment of the trial court.

The following facts are relevant to our resolution of this appeal. The plaintiff brought this action against the defendant on May 24, 1991. In her complaint, the plaintiff alleged that she relied to her detriment on the advice, experience and expertise of the defendant and its agents in connection with the purchase and financing of two properties located at 31 Isaac Street, Norwalk (Isaac Street property), and 142-152 Connecticut Avenue, Norwalk (Connecticut Avenue property). On March 30, 1987, the plaintiff borrowed $200,000 from the defendant and, as security for the loan, executed a promissory note and gave a mortgage to the defendant on the Isaac Street property. The plaintiff contracted to purchase the Connecticut Avenue property on February 4, 1986. In connection with the contract, the plaintiff accepted and executed a series of mortgage commitment letters concerning the Connecticut Avenue property, the last one expiring on March 14, 1988. The plaintiff and the sellers never completed this transaction, however, and on May 5, 1988, the plaintiff sold her right to the contract to a third party.

The plaintiff alleged that she sought to finance the purchase of both properties through the defendant bank because the defendant held existing mortgages on the properties and allegedly knew the sellers, and she thought that she could enter into a special relationship with the defendant. The plaintiff alleged that she in fact established a special relationship of trust and confidence with the defendant and that, by virtue of this special banking relationship, the defendant owed her a duty to advise her of any information it had obtained relating to the properties. The plaintiff alleged that the

defendant breached this duty by failing to advise her of certain detrimental information relating to the properties and the sellers and that said breach caused the plaintiff to suffer economic and other damages.[2] The one count complaint alleged claims for fraud, misrepresentation, breach of an implied covenant of good faith and fair dealing, breach of a fiduciary duty and relationship of trust and confidence, and a violation of the Connecticut Unfair Trade Practices Act (CUTPA), General Statutes § 42-110a et seq.

The defendant filed an answer and special defenses, alleging that the plaintiff's claims were barred by the applicable statutes of limitation and by the doctrines of res judicata and collateral estoppel.[3] The plaintiff

---

[2] Specifically, the plaintiff claimed that the defendant failed to inform her of prior lawsuits and fires relating to the properties, and of various construction and zoning problems of which the defendant knew or should have known by virtue of inspections or because of its prior knowledge of the buildings and association with the sellers. The plaintiff claimed that if she had had that information, she would not have purchased the Isaac Street property. She alleges that she purchased a building with a value of less than she had been led to believe by the defendant and that she lost rental income from the failed closing of the Connecticut Avenue property.

[3] Prior to the commencement of this claim, the defendant brought a foreclosure action against the plaintiff with respect to the Isaac Street property. In that action, the plaintiff alleged several special defenses, including fraudulent and negligent misrepresentation, unconscionability, breach of the implied covenant of good faith and fair dealing, and breach of a fiduciary duty. The case was tried to the court, which heard extensive testimony from the plaintiff. The trial court, *Stevens, J.*, found for the defendant bank and against the plaintiff on all the special defenses and rendered a judgment of foreclosure in favor of the bank. The court found that the plaintiff failed to meet her burden of proving by clear and convincing evidence that she had a legitimate defense to the foreclosure action based on fraudulent misrepresentation, and that no negligent misrepresentations or omissions were made to the plaintiff regarding the matters that affected her decision whether to proceed with the closing. The court also found that the plaintiff offered no facts to indicate that the bank acted unconscionably or in bad faith and that she had failed to meet her burden of proof on those claims as well. The court further found that there was no special relationship of trust or confidence that would give rise to a fiduciary duty on the part of the bank.

filed an amended reply denying the claims made in the defendant's special defenses and alleging that the defendant fraudulently concealed the plaintiff's causes of action in violation of General Statutes § 52-595. A jury was selected and the trial commenced on February 25, 1997.

On March 7, 1997, at the close of the plaintiff's case, the defendant moved for a directed verdict pursuant to Practice Book § 16-37. After hearing argument, the trial court reserved decision on the motion. Thereafter, on March 11, 1997, the trial court stated the following: "As I indicated to counsel in chambers, I was going to place on the record, this morning, my position with respect to many of the claims being made by the plaintiff in this lawsuit. You may recall, initially, I received a number of motions in limine regarding many of these same issues when the lawsuit or the taking of evidence was about to commence and reserved decision to see what the evidence would show. Thereafter, at the conclusion of the plaintiff's case Friday, there was a motion . . . a motion for directed verdict by the defense—defendant's and at the time I indicated I would not direct a verdict.

"But, on consideration over the weekend and review of the case in its entirety, what the evidence has shown, from the way I viewed the evidence in any event, I'm not going to charge the jury with respect to a number of issues raised by the plaintiff, and, that would have the effect of directing a verdict, if you will. One of the concerns I have, is the complaint as drafted. The one count contains numerous claims, issues, causes of action and it would be difficult for me to sort that out. I certainly can't direct a verdict as to the entire count, at least at this juncture.

"I indicated, if I were to allow all claims to go to the jury, I know that based on the evidence as [it has] been introduced in this courtroom and the jury comes back

with a verdict on any of these issues, I—for the plaintiff, I would take it away from the jury, as I would be duty bound to do. Not to create false hopes, if the jury were to come back in any one particular for the plaintiff, on any of these issues, I made my mind up."

The trial court found that as to the fraud, misrepresentation, tort and CUTPA claims, the plaintiff failed to present clear, precise and unequivocal evidence from which a jury could infer fraudulent concealment. The court, therefore, concluded that the applicable three year statutes of limitation were not tolled and that the plaintiff's claims were barred. These conclusions of the trial court applied to both the Connecticut Avenue and Isaac Street properties.

In addition to the ruling as to the statutes of limitation, the trial court ruled that the plaintiff's claims relating to the Isaac Street property were precluded by res judicata[4] but that her claims as to the Connecticut Avenue property were not precluded on res judicata or collateral estoppel grounds because those claims were not involved in the prior foreclosure action.

The trial court concluded that the only viable claim remaining was the claim for a breach of the implied covenant of good faith and fair dealing as to the Connecticut Avenue property and that it would charge the jury as to that claim alone. Thereafter, the defendant presented one witness and then rested its case. No rebuttal was offered.

The next day the trial court stated the following: "Before we start anything regarding the present case, I want to make sure that the parties understand and

---

[1] Specifically, the trial court stated that "in the case of Norwalk Savings Society versus Krondes action decided by Judge Stevens, fraudulent omission and misrepresentation emanating from the bank's relationship with Mrs. Krondes regarding the Isaac Street property were decided against her; therefore I am eliminating those issues from this case."

the attorneys understand exactly what I will entertain today and that is what issue I will allow or claim I will allow to be presented to the jury. Yesterday, you will recall, I went through the various claims of the plaintiff that are contained in [her] revised complaint and decided that all save one would not be presented to the jury. I gave the reasons therefor. All reasons that I placed on the record but with respect to this claim that I said I would allow to go to the jury. I want to make sure we understand, we're all on the same wavelength. The claim, as I recall, is a breach by the defendant Norwalk Savings Society of an implied covenant of good faith and fair dealing."

The trial court explained further that it would allow the claim only as it relates to the Connecticut Avenue property. The trial court stated that "with respect to the claim of the breach of covenant, implied covenant of good faith and fair dealing relating to the Isaac Street property, that was heard. That was heard and decided in Norwalk Savings Society versus Krondes, decided a couple months ago by Judge Stevens. It was pled as a special defense, as I recall, along with a lot of other special defenses. It was fully litigated. There was a hearing, contested hearing. The judge decided the issue and decided against the defendant in that action, the plaintiff in this case . . . . [T]he plaintiff must understand that she made an election to have it heard and tried to the court. . . . She pled the breach of implied covenant of good faith and fair dealing as it relates to Isaac Street in that foreclosure action. . . . It was pled to the court. It was decided by the court. [It] cannot now be pled to the jury and decided by the jury."

Thereafter, the defendant renewed its motion for a directed verdict with respect to all claims in the complaint. The trial court stated, "Everything else is gone, as far as I'm concerned, from the case. It's as though I directed a verdict on all those other areas but because

all of the cases—all of the claims were included in one paragraph it was very difficult for me to try to sort those out. Had they been in separate counts I would have entered a directed verdict as to those counts where I felt it required. Here, the best I can do is just say I will not charge these matters to the jury and therefore, it's as though I directed a verdict on all of these particular claims."[5] The defendant argued that the court should direct a verdict as to the breach of an implied covenant of good faith and fair dealing because the plaintiff failed to present any evidence of a breach to support her claim. The plaintiff countered that she presented sufficient evidence from which a jury could find for the plaintiff.

Following the parties' arguments on the defendant's renewed motion for a directed verdict, the trial court stated the following: "I don't see for the life of me where the lender has breached any covenant, expressed or implied, in that contract without being able to make certain of these other claims that are precluded. There's no way in the world that a reasonable jury on the basis of competent evidence could reasonably find for the plaintiff on this, the only claim that's viable. There's no way in the world that can be done. So rather than prolong the agony and get Mrs. Krondes' hopes up, this is my ruling and I'll end it right here and I'm going to direct a verdict on all claims against the plaintiff and for the defendant. . . . I don't see any competent evidence from which a jury can make a finding in favor of the plaintiff on this particular claim. I'm not ruling on those other claims. They're not before me. I said that I'm not going to hear that and so that's my ruling and that ends

---

[5] In effect, the trial court had denied the defendant's motion for a directed verdict made at the close of the plaintiff's case as to the plaintiff's claim for a breach of the implied covenant of good faith and fair dealing as to the Connecticut Avenue property, and granted it as to the rest of the plaintiff's claims.

the case at this point and exceptions are noted." The trial court did not charge the jury and no closing arguments were made to the jury.

The trial court then directed the jury to find the issues for the defendant and denied the plaintiff's request to have the jury polled. The plaintiff filed a motion to set aside the verdict and for a new trial, which was denied by the trial court on May 6, 1997. This appeal followed.

## I

The plaintiff first claims that the trial court failed to follow the correct procedures under the rules of practice in directing the verdict for the defendant, thereby denying the plaintiff a fair trial. Specifically, the plaintiff claims that the trial court proceeded in a disjointed and confusing manner when it granted what the plaintiff refers to as a partial directed verdict on March 11, 1997, and subsequently when it reversed its decision in part on March 12, 1997, and directed a verdict in favor of the defendant on all counts. The defendant claims that this court should not review this claim because the plaintiff did not raise this claim at trial, or in her motion to set aside the verdict and for a new trial.

We first note that the plaintiff objected to the granting of the defendant's motion for a directed verdict both when it was initially made and when it was renewed at the close of the defendant's case. Although the plaintiff did not specifically claim that the defendant's motion when made at the close of the plaintiff's case could be granted or denied only in toto, we will review this claim because it is encompassed within the plaintiff's objection to the granting of the defendant's motion.

Practice Book § 16-37 allows the very procedure the plaintiff claims was a partial directed verdict. That section provides in relevant part: "Whenever a motion for a directed verdict made at any time after the close of

the plaintiff's case in chief is denied or for any reason is not granted, the judicial authority is deemed to have submitted the action to the jury subject to a later determination of the legal questions raised by the motion. The defendant may offer evidence in the event the motion is not granted, without having reserved the right to do so and to the same extent as if the motion had not been made. After the acceptance of a verdict . . . a party who has moved for a directed verdict may move to have the verdict and any judgment rendered thereon set aside . . . ."

Here, on March 7, 1997, when the defendant moved for a directed verdict at the close of the plaintiff's case, the trial court reserved decision on the motion. Then, on March 11, 1997, it ruled that with the exception of one claim, all of the plaintiff's claims were time barred. Prior to submitting the case to the jury, the trial court determined that the plaintiff had failed to present competent evidence to support her claim for a breach of the implied covenant of good faith and fair dealing and it directed the verdict as to all claims. Because the rules of practice allow a trial court to revisit and decide issues of law raised in a motion for directed verdict,[6] as was the case here, the procedure followed by the trial court was not improper. Furthermore, Practice Book § 16-37 is not limited in any way and does not prohibit a trial court from granting a motion for a directed verdict as to some causes of action, while reserving decision as to others.

## II

The plaintiff next claims that the trial court improperly directed the verdict in favor of the defendant

---

[6] Also, General Statutes § 52-216 provides in relevant part: "The court shall decide all issues of law and all questions of law arising in the trial of any issue of fact; and, in committing the action to the jury, shall direct them to find accordingly. . . ."

because (1) the plaintiff presented sufficient evidence from which a jury could find that the statute of limitations had been tolled by either the defendant's fraudulent concealment of the causes of action or a continuing course of conduct on the part of the defendant, (2) the trial court used an improper standard in directing the verdict and (3) the trial court improperly determined that the plaintiff's claims were precluded on res judicata and collateral estoppel grounds.

"The rules controlling appellate review of a directed verdict are well settled. Directed verdicts are not generally favored. A trial court's decision to direct a verdict can be upheld only when the jury could not reasonably and legally have reached any other conclusion. . . . We review a trial court's decision to direct a verdict for the defendant by considering all of the evidence, including reasonable inferences, in the light most favorable to the plaintiff." (Internal quotation marks omitted.) *Ciarlelli* v. *Romeo*, 46 Conn. App. 277, 282, 699 A.2d 217, cert. denied, 243 Conn. 929, 701 A.2d 657 (1997). "While it is the jury's right to draw logical deductions and make reasonable inferences from the facts proven; *Champagne* v. *Raybestos-Manhattan, Inc.*, 212 Conn. 509, 529, 562 A.2d 1100 (1989); it may not resort to mere conjecture and speculation. *Burke* v. *West Hartford*, 147 Conn. 149, 151–52, 157 A.2d 757 (1960). If the evidence would not reasonably support a finding of the particular issue, the trial court has a duty not to submit it to the jury." (Internal quotation marks omitted.) *DiDomizio* v. *Frankel*, 44 Conn. App. 597, 600, 691 A.2d 594 (1997).

## A

The plaintiff claims that there was sufficient evidence from which a jury could find that the statutes of limitation had been tolled by either the defendant's fraudulent concealment or its continuing course of conduct.

The following additional facts are relevant to our resolution of this claim. The plaintiff closed on the Isaac Street property on March 30, 1987, when she obtained a loan and mortgaged the property to the defendant. The plaintiff never closed on the Connecticut Avenue property and sold her right to acquire the property on May 5, 1988. With respect to the plaintiff's fraud and misrepresentation claims, the applicable statute of limitations is three years. *Day* v. *General Electric Credit Corp.*, 15 Conn. App. 677, 683, 546 A.2d 315, cert. denied, 209 Conn. 819, 551 A.2d 755 (1988). The tort claims are governed by a three year statute of limitations,[7] as is the CUTPA claim.[8] Accordingly, with the exception of the plaintiff's claim for a breach of the implied covenant of good faith and fair dealing, the statutes of limitation for all of her claims were three years.[9] The plaintiff's claims as to the Isaac Street property, therefore, had to be brought no later that March 30, 1990, and the Connecticut Avenue claims, May 5, 1991. The present action, however, was not brought until May 24, 1991, and it is therefore barred by the statutes of limitation unless the plaintiff can show that the statutes were tolled by either the defendant's fraudulent concealment or a continuing course of conduct.

General Statutes § 52-595 provides: "If any person, liable to an action by another, fraudulently conceals from him the existence of the cause of such action, such cause of action shall be deemed to accrue against

---

[7] General Statutes § 52-577 provides: "No action founded upon a tort shall be brought but within three years from the date of the act or omission complained of."

[8] General Statutes § 42-110g (f) provides that an action for a violation of CUTPA "may not be brought more than three years after the occurrence of a violation of this chapter."

[9] The trial court found that the claim for a breach of the implied covenant of good faith and fair dealing was governed by a six year statute of limitation and was therefore timely, and the plaintiff does not challenge this finding on appeal. Thus, this claim will not be addressed in this section.

such person so liable therefor at the time when the person entitled to sue thereon first discovers its existence." Our Supreme Court has held that " '[t]o establish that the [defendant] had fraudulently concealed the existence of [her] cause of action and so had tolled the statute of limitations, the [plaintiff] had the burden of proving that the [defendant was] aware of the facts necessary to establish this cause of action . . . and that [it] had intentionally concealed those facts from the [plaintiff].' *Bound Brook Assn.* v. *Norwalk*, 198 Conn. 660, 665, 504 A.2d 1047, cert. denied, 479 U.S. 819, 107 S. Ct. 81, 93 L. Ed. 2d 36 (1986)." *Connell* v. *Colwell*, 214 Conn. 242, 250, 571 A.2d 116 (1990). "The [defendant's] actions must have been directed to the very point of obtaining the delay [in filing the action] of which [it] afterward [seeks] to take advantage by pleading the statute. *Lippitt* v. *Ashley*, [89 Conn. 451, 480, 94 A. 995 (1915)] . . . . To meet this burden, it was not sufficient for the [plaintiff] to prove merely that it was more likely than not that the [defendant] had concealed the cause of action. Instead, the [plaintiff] had to prove fraudulent concealment by the more exacting standard of clear, precise, and unequivocal evidence . . . ." (Citations omitted; internal quotation marks omitted.) *Cutsumpas* v. *Connecticut Light & Power Co.*, 16 Conn. App. 108, 112–13, 546 A.2d 962 (1988).

The plaintiff claims that she asked agents of the defendant whether they knew about the sellers, the financial soundness of the investment or anything material or adverse to her investment in the properties. She claims that the agents denied having such knowledge, when in fact they personally knew the sellers and were aware of detrimental information relating to the properties, which they concealed from the plaintiff. She claims that she conducted an independent investigation after being alerted by the Federal Bureau of Investigation

that the information necessary to commence this action remained concealed from her until after August, 1989, and, therefore, she had until at least August, 1991, to commence this action.

The evidence relied on by the plaintiff fails to show any intent on the part of the defendant to conceal facts, nor does it support a finding that the defendant's alleged concealment was directed toward obtaining a delay in the filing of this action.

The evidence before the trial court showed that the events of which the plaintiff complained took place more than three years prior to the plaintiff's institution of this action and that the statutes of limitation were not tolled. The trial court correctly concluded that the plaintiff's claims were time barred as a matter of law and, therefore, properly directed a verdict. "[W]here the judgment in a case heard before a jury depends wholly on a question of law, so that any other verdict than the one so required would inevitably be set aside upon review, it has long been the practice for the judge to direct the jury to bring in a particular verdict. It is merely reaching more speedily and directly a result which would inevitably be reached in the end." (Internal quotation marks omitted.) *Simmons* v. *Southern Connecticut Gas Co.*, 7 Conn. App. 245, 250, 508 A.2d 785 (1986).

The plaintiff also claims that the trial court improperly directed the verdict for the defendant because there was sufficient evidence to submit to the jury that the defendant engaged in a continuing course of conduct that tolled the statutes of limitation. The plaintiff states in her brief that the trial court "never addressed this issue in any of its rulings or findings on the motion for directed verdict." A review of the transcript reveals that although the plaintiff raised the claim at trial, the trial court's decision on March 11, 1997, regarding the plaintiff's failure to present sufficient evidence to toll the

limitations period, was predicated on the fraudulent concealment issue, and that no mention was made of the claim of a continuing course of conduct.

"It is the appellant's burden to provide an adequate record for review. Practice Book § [60-5] . . . . It is, therefore, the responsibility of the appellant to move for an articulation or rectification of the record where the trial court has failed to state the basis of a decision; *Gerber & Hurley, Inc.* v. *CCC Corp.*, 36 Conn. App. 539, 543, 651 A.2d 1302 (1995); to clarify the legal basis of a ruling; *Leverty & Hurley Co.* v. *Commissioner of Transportation*, 192 Conn. 377, 379, 471 A.2d 958 (1984); or to ask the trial judge to rule on an overlooked matter. *Wolk* v. *Wolk*, 191 Conn. 328, 335 n.1, 464 A.2d 780 (1983)." (Citation omitted.) *Willow Springs Condominium Assn., Inc.* v. *Seventh BRT Development Corp.*, 245 Conn. 1, 52–53, 717 A.2d 77 (1998). Here, the plaintiff has not moved for an articulation of the trial court's ruling regarding the continuing course of conduct claim. We, therefore, decline to review this issue.

B

The plaintiff claims that the trial court failed to use the proper standard in directing the verdict because the court failed to find specifically that the jury could not reasonably and legally have found that the plaintiff proved her case. The plaintiff claims that "[a]t no time in ruling on the motion for directed verdict did the court ever state that there was insufficient evidence to go to the jury on the issues of fraud, misrepresentation and [the CUTPA claim]"[10] and that in rendering its final

---

[10] We note that the plaintiff has failed to brief any claim concerning the granting of the defendant's motion for a directed verdict as to her claim for a breach of the implied covenant of good faith and fair dealing concerning the Connecticut Avenue property. Issues not briefed are deemed abandoned. *Burnham* v. *Karl & Gelb, P.C.*, 50 Conn. App. 385, 394 n.4, 717 A.2d 811, cert. granted on other grounds, 247 Conn. 944, 723 A.2d 320 (1998); *Timberland Development Corp.* v. *Planning & Zoning Commission*, 43 Conn. App. 606, 610, 684 A.2d 1216 (1996), cert. denied, 240 Conn. 902, 688 A.2d 331 (1997).

decision on the motion for directed verdict the "trial court failed to specifically find that the jury could not reasonably and legally have found that the plaintiff had proved her case." We disagree.

Here, the trial court found that because no reasonable juror could find fraudulent concealment on the part of the defendant, the statutes of limitation were not tolled. Accordingly, the court held that the plaintiff's claims of fraud, misrepresentation, a violation of CUTPA and breach of fiduciary duty and relationship of trust and confidence were each barred by a three year statute of limitations. The fact that the trial court did not restate this finding on March 12, 1997, when it directed the verdict as to the final claim is of no consequence. The effect of the trial court's ruling on March 11, 1997, was to direct a verdict for the defendant on all of the plaintiff's claims except one. The trial court used the correct standard in directing the verdict on these claims and the plaintiff's claim is without merit.

C

The plaintiff next claims that the trial court improperly determined that her claims were precluded under the doctrines of res judicata and collateral estoppel. We disagree.

The plaintiff claims that the trial court improperly determined that her claims were precluded on res judicata or collateral estoppel grounds because the foreclosure action did not involve the Connecticut Avenue property and there was never an adjudication on her CUTPA claims because they were not made in the foreclosure action. The plaintiff, however, misconstrues the trial court's ruling on this issue.

The trial court specifically held that the plaintiff's claims as to the Connecticut Avenue property were not

precluded by either res judicata or collateral estoppel.[11] With the exception of the claim for a breach of the implied covenant of good faith and fair dealing, the trial court held that all of the plaintiff's claims concerning both properties were precluded by the statutes of limitation. The trial court also held that all of the claims relating to Isaac Street were precluded under the doctrine of res judicata. Because we have concluded that the trial court correctly precluded the jury from determining any claims except the claim for breach of the implied covenant of good faith because the statutes of limitation had run, the only claim we must examine concerning the issue of res judicata involves the plaintiff's claim for a breach of the implied covenant of good faith and fair dealing relating to the Isaac Street property.

Here, the trial court held that the plaintiff was precluded from submitting this claim to the jury because it was raised in the foreclosure action, fully litigated in a contested hearing and decided by the trial court against the plaintiff. The trial court held further that the plaintiff chose to have her claims in the foreclosure action decided by the court, and that she could not now claim that she was being denied the right to have her claims heard by a jury. Although the defendant alleged that the plaintiff's claims were precluded by both res

---

[11] The trial court stated the following: "[W]ith regard to res judicata, the claimed effect of res judicata is the claim preclusion effect of same and Judge Stevens' decision in Norwalk Savings Society versus Krondes. The court notes while Mrs. Krondes raised the same issues in that case as in this, all be it in special defenses in that case, the factual predicate in the foreclosure action involved a relationship with the bank concerning the Isaac Street property; whereas, in the instant matter, her relationship with Norwalk Savings Society involves two properties, Isaac Street and Connecticut Avenue. In the foreclosure action her relationship with the bank vis-a-vis the Connecticut Avenue property was irrelevant. For example, the claimed mortgage commitment contracts regarding same were unnecessary in Judge Stevens' findings and, therefore, I'll not preclude the entire claim on the basis of his decision."

judicata and collateral estoppel, the trial court analyzed the issue of preclusion only in terms of res judicata.

"[T]he doctrine of res judicata, or claim preclusion, [provides that] a former judgment on a claim, if rendered on the merits, is an absolute bar to a subsequent action on the same claim. A judgment is final not only as to every matter which was offered to sustain the claim, but also as to any other admissible matter which might have been offered for that purpose. . . . The rule of claim preclusion prevents reassertion of the same claim regardless of what additional or different evidence or legal theories might be advanced in support of it. *Delahunty* v. *Massachusetts Mutual Life Ins. Co*, 236 Conn. 582, 589, 674 A.2d 1290 (1996)." (Citations omitted; internal quotation marks omitted.) *Tirozzi* v. *Shelby Ins. Co.*, 50 Conn. App. 680, 685, 719 A.2d 62, cert. denied, 247 Conn. 945, 723 A.2d 323 (1998). "[T]he appropriate inquiry with respect to [claim] preclusion is whether the party had an adequate opportunity to litigate the matter in the earlier proceeding . . . ." (Internal quotation marks omitted.) *Connecticut National Bank* v. *Rytman*, 241 Conn. 24, 43–44, 694 A.2d 1246 (1997). "The doctrines of res judicata and collateral estoppel protect the finality of judicial determinations, conserve the time of the court, and prevent wasteful relitigation. Res judicata or claim preclusion prevents a litigant from reasserting a claim that has already been decided on the merits." (Internal quotation marks omitted.) *Daoust* v. *McWilliams*, 49 Conn. App. 715, 723, 716 A.2d 922 (1998).

Each of the elements of res judicata is satisfied in this case. Both the foreclosure and the present actions involve the same parties, the sole plaintiff, and the bank, Norwalk Savings Society. The same claim, raised by the plaintiff here in her complaint, was raised by her in the foreclosure action as a special defense. The judgment by the trial court in the foreclosure action ruling

that the plaintiff had failed to show that the bank acted in bad faith was rendered on the merits as the foreclosure action required the judge to decide the merits of the plaintiff's claim. The foreclosure action involved a contested hearing, in which the plaintiff offered extensive testimony as to her claim and, accordingly, the plaintiff had the opportunity to litigate her claim fully. We conclude that the trial court properly determined that the judgment in the foreclosure action as to the claim of the breach of the implied covenant of good faith and fair dealing involving the Isaac Street property precluded submission to the jury.

## III

The plaintiff's final claim is that the trial court improperly denied her request to have the jury polled. We are not persuaded.

The following additional facts are relevant to this claim. On March 12, 1997, after the trial court determined that it would direct a verdict for the defendant as to all of the plaintiff's claims, the court brought the jury into the courtroom and stated the following: "I want to explain to you that for better or for worse the court has taken this matter from you. You're not going to decide anything. I have decided it and I have—what I have to do, I guess, however, is to require that you go into your deliberation room and I'll give you—we have verdict forms?

"[Defendant's Counsel]: Yes, Your Honor.

"The Court: I will give you a defendant's verdict form and I will direct that you do two things. That you elect a foreperson and that foreperson then direct a verdict for the defendant by signing and dating said. So there's no deliberation. I am directing a verdict for the defendant. So you don't have any—there's no option. There's no choice. . . . ."

Thereafter, the jury exited the courtroom. When the jury failed to return promptly, the court directed the sheriff to bring the jury back into the courtroom. The trial court asked if there was a problem and a juror responded, "We're all just undecided, Judge." The trial court again instructed the jurors that the court had taken the decision away from them, and, to remedy the situation, the court modified the verdict form to read that pursuant to the court's order, the jury finds the issues in this case for the defendant. After the verdict was rendered, the plaintiff's counsel requested that the jury be polled on the directed verdict. The trial court denied the request, stating, "No, because it's not their—they haven't discussed it yet. They haven't had the opportunity to talk about it, consider the evidence, to look at all the documents. So this has nothing to do with the jurors' discretion. This has to do with the court's order."

The plaintiff claims that "it was apparent from the record that the jury had not agreed unanimously to direct the verdict thereby making the verdict that was actually rendered defective and entitling the plaintiff to a new trial." The plaintiff's argument is entirely without merit. A trial court may direct a verdict for a defendant if it finds that the jury could not reasonably and legally have reached any other conclusion. *DiDomizio* v. *Frankel,* supra, 44 Conn. App. 600. When a verdict is directed, the trial judge, in effect, orders the entry of judgment without any consideration on the part of the jury because, as a matter of law, there could be only one verdict. Practice Book § 42-31,[12] which now requires

[12] Practice Book § 42-31 provides: "After a verdict has been returned and before the jury have been discharged, the jury shall be polled at the request of any party or upon the judicial authority's own motion. The poll shall be conducted by the clerk of the court by asking each juror individually whether the verdict announced is such juror's verdict. If upon the poll there is not unanimous concurrence, the jury may be directed to retire for further deliberations or they may be discharged."

that the jury be polled at the request of any party or upon the judicial authority's own motion, presupposes that the verdict that is being returned is that of the jury, not the court. Section 42-31 provides in relevant part that "[t]he poll shall be conducted by the clerk of the court by asking each juror individually whether the verdict announced is such juror's verdict. . . ." Here, the directed verdict was clearly not that of the jurors and, as such, Practice Book § 42-31 does not apply.

The judgment is affirmed.

In this opinion the other judges concurred.