[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION RE: MOTION TO DISCHARGE NOTICE OF LIS PENDENS
On April 6, 2000, the plaintiff, the Cadle Company (Cadle), filed a seven count amended complaint against the defendants, Lawrence Gabel, Elizabeth Gabel and Norman Zolot, alleging a scheme whereby the defendants fraudulently transferred assets of Lawrence Gabel to avoid the payment of a foreclosure judgment in violation of the Connecticut Uniform Fraudulent Transfer Act (UFTA), General Statutes §§ 52-552a et seq. Cadle also recorded a notice of lis pendens in the land records. On August 11, 2000, Elizabeth Gabel filed a motion to discharge notice of us pendens stating as grounds a lack of probable cause to sustain the validity of Cadle's fraudulent conveyance claim.
The first, second and third counts of the complaint allege that Lawrence Gabel over a period of four years engaged in a course of conduct whereby he transferred most of his income as well as other assets, not including real property, to his wife, Elizabeth Gabel, in violation of General Statutes §§ 52-552e (a)(1), 52-552e (a)(2) and 52-552f, respectively.[1] The fourth, fifth and sixth counts also allege violations of §§ 52-552e (a)(1), 52-552e (a)(2) and 52-552f but with respect to the transfer of property located at 21 North Main Street (a/k/a 34 North Main Street), Essex, Connecticut. The seventh count alleges a constructive trust as to the property.
Elizabeth Gabel advances three arguments in her motion to discharge the lis pendens. Two of those arguments attack the applicability of the UFTA to the defendant.[2] Elizabeth Gabel also argues that the plaintiffs claims are precluded by the doctrines of collateral estoppel and res judicata. The court need only find probable cause for one of the counts CT Page 12376 to sustain the notice of lis pendens. The memoranda of both parties fail to address the constructive trust count. In determining whether to sustain the motion to discharge the lis pendens, the court, however, must also decide whether there is probable cause for the imposition of that constructive trust because that count is intended to affect real property. General Statutes § 52-325 (b); See, e.g., Cohen v. Cohen,182 Conn. 193, 203, 438 A.2d 55 (1980) ("[A] constructive trust arises where a person who holds title to property is subject to an equitable duty to convey it to another on the ground that he would be unjustly enriched if he were permitted to retain it."). As that count is dispositive of the motion, the court will address only whether that count is precluded by the doctrines of collateral estoppel and res judicata and whether there is probable cause to sustain the count.
I. Facts
The plaintiff has alleged the following facts. On July 27, 1987, Lawrence Gabel executed a promissory note and a mortgage deed for $610,000 in favor of Connecticut National Mortgage Company (CNMC). On October 18, 1991, Lawrence Gabel quitclaimed the deed to Elizabeth Gabel for no consideration and then defaulted on the note. In December of 1993, Ocwen Federal Bank, FSB (f/k/a Berkeley Federal Bank Trust, FSB) (Ocwen), which then owned CNMC, commenced an action, Berkeley FederalBank and Trust v. Gabel, Superior Court, judicial district of Middlesex, Docket No. 071109, to foreclose the mortgage. In that foreclosure action, Lawrence and Elizabeth Gabel were named as defendants. Branford Savings Bank was also named as a defendant because of a pending debt collection action, Branford Savings Bank v. GA Realty, Superior Court, judicial district of New Haven, Docket No. 0333944, for which a lis pendens had been recorded in the land records.
On May 20, 1994, in the debt collection action, the Superior Court entered a judgment in favor of Branford Savings Bank against Lawrence Gabel for $96,751.64. Branford Savings Bank v. GA Realty, Superior Court, judicial district of New Haven, Docket No. 0333944 (March 29, 1993). On June 24, 1994, Branford Savings Bank assigned that judgment to Cadle.
In the foreclosure action in June of 1995, the court ordered a foreclosure by sale. Lawrence and Elizabeth Gabel appealed that judgment and while the appeal was pending,[3] Lawrence Gabel organized a group of investors, headed by Norman Zolot, to fund a trust with the purpose of purchasing the note and mortgage from Ocwen. The plaintiff has alleged an agreement between Lawrence Gabel and Zolot whereby Zolot, as trustee, would substitute himself as the plaintiff in the foreclosure action. The alleged plan required Zolot to become the high bidder in the foreclosure CT Page 12377 sale and to take legal title to the property. In return, Lawrence Gabel agreed to withdraw the appeal and to guarantee the monies expended by the group of investors in acquiring the note and the mortgage. The plaintiff alleges that these actions were taken in an effort to avoid creditors' claims while maintaining the use and enjoyment of the property.
On or about December 30, 1996, Ocwen assigned the mortgage and endorsed the note to Norman Zolot acting in his trustee capacity. On December 31, 1996, Lawrence Gabel recorded a quitclaim deed that conveyed the property back to him from Elizabeth Gabel. On February 12, 1997, the Court granted Zolot's motion to be substituted as the plaintiff in the foreclosure action. The court set a new sale date of June 14, 1997 and on that date, Zolot became the high bidder for the property. The court approved the sale on July 7, 1997. On August 21, 1997, Zolot transferred the property back to Elizabeth Gabel for no consideration.
II. Standard
Section 52-325b (a) of the General Statutes requires that the plaintiff bear the burden of proof as to whether there is probable cause to sustain the claim upon which the lis pendens is based. "[The] probable cause hearing is not a trial on the merits, nor is it intended as such. The plaintiff need not establish his claim by a preponderance of the evidence. The court, while not making a final decision on the merits, weighs the testimony given and the documentary proof presented. The trial court's duty is to weigh the probabilities based on the facts and to exercise its broad discretion in determining whether there is probable cause to sustain the lis pendens. Williams v. Bartlett, 189 Conn. 471,483, 457 A.2d 290 [appeal dismissed, 464 U.S. 801, 104 S.Ct. 46,78 L.Ed.2d 67] (1983); Michael-Papa Associates v. Julian, 178 Conn. 446,447, 423 A.2d 105 (1979); Cavallo v. Lewis, 1 Conn. App. 519, 520,473 A.2d 338 (1984). Probable cause is a flexible, common sense standard. Wall v. Toomey, 52 Conn. 35, 36 (1884)." Sanstrom v.Strickland, 11 Conn. App. 211, 212, 525 A.2d 989 (1987).
III. Collateral EstoppeL/Res Judicata
 A. Collateral Estoppel
Elizabeth Gabel argues that because Branford Savings Bank, from whom Cadle was assigned the judgment, did not object to the conveyances in question or to the substitution of Zolot as the plaintiff in the foreclosure action, it is collaterally estopped from challenging the validity of the conveyances. The plaintiff argues that "[t]he legal and factual issues that comprise the plaintiffs fraudulent conveyance and constructive trust claim were not litigated in the foreclosure action." CT Page 12378 Plaintiffs Objection to Defendant's Motion to Discharge Lis Pendens, p. 7.
"Collateral estoppel, or issue preclusion, prohibits the relitigation of an issue when that issue was actually litigated and necessarily determined in a prior action. . . . For an issue to be subject to collateral estoppel, it must have been fully and fairly litigated in the first action. It also must have been actually decided and the decision must have been necessary to the judgment." (Citations omitted; internal quotation marks omitted.) Aetna Casualty Surety Co. v. Jones,220 Conn. 285, 296, 596 A.2d 414 (1991). "Furthermore, [t]o invoke collateral estoppel the issues sought to be litigated in the new proceeding must be identical to those considered in the prior proceeding. . . ." (Citations omitted; internal quotation marks omitted.) Mazziottiv. Allstate Ins. Co., 240 Conn. 799, 812, 695 A.2d 1010 (1997).
In the foreclosure action, upon which the Elizabeth Gabel relies as the basis for her collateral estoppel argument, the court granted summary judgment as to liability only, finding no merit in the "several special defenses [pleaded by the defendant] all of which are based on12 U.S.C. § 1701 x(c)(5), a portion of The National Housing Act which pertains to housing for low and moderate income families." BerkeleyFederal Bank and Trust v. Gabel, Superior Court, judicial district of Middlesex, Docket No. 071109 (April 13, 1995, Aurigemma, J.), aff'd,43 Conn. App. 923, 686 A.2d 138 (1996). A claim seeking a constructive trust requires the plaintiff to prove unjust enrichment, an issue entirely different from the one litigated in the foreclosure action. Furthermore, whether to substitute a party plaintiff and whether to impose a constructive trust require different determinations. Collateral estoppel, therefore, will not prevent the court from making a determination that probable cause exists to sustain the notice of lis pendens.
B. Res Judicata
Elizabeth Gabel argues that the notice of lis pendens should be discharged because the plaintiffs causes of action are barred by res judicata. Specifically, the defendant argues that even assuming that there were proper grounds to object to the conveyance of the property to Zolot or his subsequent substitution as the plaintiff in the foreclosure action, those objections should have been raised in that proceeding. The plaintiff argues that an action for foreclosure by sale and an action based on a constructive trust is entirely different and can not be barred by res judicata.
"[T]he doctrine of res judicata, or claim preclusion, [provides that] a CT Page 12379 former judgment on a claim, if rendered on the merits, is an absolute bar to a subsequent action on the same claim. A judgment is final not only as to every matter which was offered to sustain the claim, but also as to any other admissible matter which might have been offered for that purpose. The rule of claim preclusion prevents reassertion of the same claim regardless of what additional or different evidence or legal theories might be advanced in support of it. Delahunty v. MassachusettsMutual Lift Ins. Co., 236 Conn. 582, 589, 674 A.2d 1290 (1996). (Citation omitted; internal quotation marks omitted.) Tirozzi v. Shelby Ins. Co.,50 Conn. App. 680, 685, 719 A.2d 62, cert. denied, 247 Conn. 945,723 A.2d 323 (1998). [T]he appropriate inquiry with respect to [claim] preclusion is whether the party had an adequate opportunity to litigate the matter in the earlier proceeding. . . . (Internal quotation marks omitted.) Connecticut National Bank v. Rytman, 241 Conn. 24, 43-44,694 A.2d 1246 (1997)." Krondes v. Norwalk Savings Society,53 Conn. App. 102, 119, 728 A.2d 1103 (1999).
The present case involves a claim brought in equity for the imposition of a constructive trust. The constructive trust claim is very different than the claims litigated in the foreclosure action. Furthermore, there was no opportunity to litigate the alleged unjust enrichment resulting from the alleged fraudulent conveyance. Moreover, the fact that the conveyance was achieved through foreclosure by sale sanctioned by the court does not prevent a future claim that the conveyance was fraudulent. "Absent authority to the contrary, if the defendant allowed his property to be foreclosed with the intent to avoid his debt to the plaintiff, the conveyance can be labeled fraudulent." Spyder Enterprisesv. Ward, Superior Court, judicial district of Stamford/Norwalk at Stamford, Docket No. 1601139 (May 21, 1998, Hickey, J.). In the present case, Elizabeth Gabel does not cite, and the court did not discover, any authority for the proposition that a foreclosure action in which all the parties participated prohibits by application of the doctrine of res judicata a subsequent action brought to contest a fraudulent conveyance or a constructive trust.
With respect to both the claims of res judicata and collateral estoppel, the court notes that Practice Book § 10-50 requires that res judicata to be pleaded as a special defense. Furthermore, "[c]ollateral estoppel, like res judicata, must be specifically pleaded by a defendant as an affirmative defense." Carnese v. Middleton,27 Conn. App. 530, 537, 608 A.2d 700 (1992). Res judicata and collateral estoppel are not properly considered by the court on a motion to dismiss; Zizka v. Water Pollution Control Authority, 195 Conn. 682, 687,490 A.2d 509 (1985); or a motion to strike; Ash v. Allstate InsuranceCo., Superior Court, judicial district of Hartford/New Britain at New Britain, Docket No. 465245, (May 6, 1996, Arena, J). A motion for summary CT Page 12380 judgment should be used to raise collateral estoppel and res judicata.Jackson v. R.G. Whipple, Inc., 225 Conn. 705, 712, 627 A.2d 374 (1993). Because collateral estoppel and res judicata are not properly raised in a motion to dismiss or a motion to strike, it is similarly not appropriate for the court to consider these claims when deciding if there is probable cause to sustain the motion to discharge the lis pendens.
IV. Constructive Trust
"The elements of a constructive trust are the intent by a grantor to benefit a third person, the transfer of property to another who stands in a confidential relationship to the grantor with the intent that the transferee will transfer the property to the third person, and the unjust enrichment of the transferee if the transferee is allowed to keep the property. A constructive trust is created by operation of law when these elements are present." Gulack v. Gulack, 30 Conn. App. 305, 310,620 A.2d 181 (1993). The allegations of the complaint, along with the record provided to the court, indicate that there is probable cause to find that Lawrence Gabel, through a series of transactions, ultimately succeeded in having title to the property in question reside with Elizabeth Gabel while maintaining all of the indicia of ownership. Between the years 1991 and 1997, three parties conveyed the property in question four times between themselves. of those four conveyances, two of the conveyances were between Lawrence Gabel and his wife Elizabeth Gabel and one of the conveyances was between Norman Zolot, as trustee, and Elizabeth Gabel. The final conveyance was the foreclosure by sale to Norman Zolot. Two of the conveyances, a conveyance between Lawrence Gabel and Elizabeth Gabel and the conveyance between Norman Zolot and Elizabeth Gabel, were made without consideration. The transfer of the property from Elizabeth Gabel back to Lawrence Gabel coincided with the acquisition of the note and mortgage from Ocwen. Furthermore, by way of these transfers Lawrence Gabel avoided payment of the judgment assigned to Cadle. Moreover, there is probable cause to find that based on his continued residence on the property that Lawrence Gabel may have engineered the plans to effectuate the fraudulent transfer. Given the timing, frequency and nature of the transfers as well as the relationship between the parties and the resulting avoidance of a debt owed to Cadle, the court finds probable cause to support the seventh, count of the complaint seeking the imposition of a constructive trust.
V. Conclusion
After examining the record provided by the parties, the court concludes that the doctrines of collateral estoppel and res judicata do not preclude the plaintiffs cause of action. Furthermore, the court concludes that there is probable cause as to the validity of the plaintiffs claim CT Page 12381 that defendants' conveyance was fraudulent in a way sufficient that, if proven, the court may find that a constructive trust arose with respect to the property. Accordingly, the motion to discharge the lis pendens is denied.
By the court
Arena, Judge