[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION RE APPLICATION FOR RECIPROCAL DISCIPLINE
This is an application for reciprocal discipline of the respondent pursuant to Practice Book Section 2-39, following an order of the United States District Court for the District of Connecticut suspending the respondent from the practice of law in that court for a period of two years, effective January 1, 2003. The respondent is a 1993 graduate of the Vermont School of Law and has been a member of the Connecticut Bar since 1994. Following a brief tour of duty as a temporary assistant Superior Court clerk, he was hired as an associate by what is now the law firm of Williams and Pattis in New Haven. He held that position until the time of the events that resulted in the present proceedings.
The facts that led to the federal court action are not in dispute. The respondent had represented the plaintiff in a federal court matter entitled Grudzien v. Waterbury Hospital. Because of the plaintiff's alleged failure to provide certain discovery, the defendant in that case had filed a series of motions that eventually led to the respondent's being sanctioned by Magistrate Martinez, who ordered Palmieri to pay the defendants the sum of $13,681.27 personally. The respondent eventually commenced settlement discussions with the defendant on Ms. Grudzien's behalf. In the course of those negotiations, he tried unsuccessfully to persuade the defendant to forgive the monetary sanctions imposed against him as a part of any settlement. He then advised Ms. Grudzien to accept the defendant's settlement offer. She agreed, in part based on his having advised her that she was responsible for payment of the sanctions imposed against him, despite the fact that the district court's order of sanctions was against Palmieri personally. This conduct violated Rules 1.1 (Competence), 1.3 (Diligence) and 1.7 (Conflict of Interest) of the Rules of Professional Conduct.
The respondent has admitted the allegations of the presentment, and the only issue for this court is the determination of the appropriate reciprocal discipline to be imposed, a sanction that should be CT Page 2612 "commensurate" with that imposed by the District Court. We know that to be "commensurate," the discipline imposed by this court need not be identical to that of the District Court and that this court has "inherent judicial power, derived from judicial responsibility for the administration of justice, to exercise sound discretion to determine what sanction to impose in light of the entire record before it." In ReWeissman, 203 Conn. 380, 384 (1987). There is, indeed, ample trial court precedent for the imposition of reciprocal discipline that is different from that imposed by another court. See, e.g., Statewide GrievanceCommittee v. Hochberg, Superior Court, judicial district of Hartford, Docket No. 575688 (July 14, 1999) (25 Conn.L.Rptr. 214); StatewideGrievance Committee v. Kaiser, Superior Court, judicial district of Hartford at Hartford, Docket No. 560389 (November 25, 1998); StatewideGrievance Committee v. Griffin, Superior Court, judicial district of Hartford-New Britain at Hartford, Docket No. 550341 (April 12, 1996).
Unfortunately, the decision of the District Court in this case, while referencing a telephone conference with the respondent during which the two-year suspension was imposed, provides no written statement of reasons that would enable this court to determine why a two-year suspension, as opposed to any other discipline available to that court, was imposed. The Respondent has advised this court that the federal grievance panel that reviewed the complaint had voted 3 to 2 to recommend suspension, with the dissenters voting for no suspension at all. This representation is not disputed by the petitioner.
Any discussion of appropriate attorney discipline begins with recognition of the fact that a "presentment proceeding is neither a civil action nor a criminal proceeding, but is a proceeding sui generis, the object of which is not the punishment of the offender, but the protection of the court." Statewide Grievance Committee v. Rozbicki, 219 Conn. 473,483 (1991), cert. denied, 502 U.S. 1094, 112 S.Ct. 1170, 117 L.Ed.2d 416
(1992). "An attorney as an officer of the court in the administration of justice, is continually accountable to it for the manner in which he exercises the privilege which has been accorded him. His admission is upon the implied condition that his continued enjoyment of the right conferred is dependent upon his remaining a fit and safe person to exercise it, so that when he, by misconduct in any capacity, discloses that he has become or is an unfit or unsafe person to be entrusted with the responsibilities and obligations of an attorney, his right to continue in the enjoyment of his professional privilege may and ought to be declared forfeited . . . Therefore, [i]f a court disciplines an attorney, it does so not to mete out punishment to an offender, but [so] that the administration of justice may be safeguarded and the courts and the public protected from the misconduct or unfitness of those who are CT Page 2613 licensed to perform the important functions of the legal profession." Doev. Statewide Grievance Committee, 240 Conn. 671, 684-85, 694 A.2d 1218
(1997), quoting Massameno v. Statewide Grievance Committee, 234 Conn. 539,554-55, 663 A.2d 317 (1995).
It is this court's understanding that this prohibition of "punishment" in disciplinary matters does not mean that courts may not impose sanctions that are painful or unpleasant. Rather, the prohibition means only that the purpose of any sanction imposed on an attorney should not be mere "retribution," an element of punishment that is frequently equated, wrongly, in this court's view, with "punishment," which is generally considered to be an effort to serve five legitimate purposes: a) retribution, or the concept of "just desserts"; b) specific deterrence, the effort to assure that the individual offender does not recidivate; c) general deterrence, the effort to deter others from committing similar offenses by making an example of the individual offender; d) rehabilitation, the improvement of the offender's skills and morals so as to make him or her a better person; and e) incapacitation, the removal of an individual from a setting in which he or she could do harm. Specific and general deterrence, rehabilitation and incapacitation, to the extent that they are consistent with protection of the court and the public, are certainly appropriate considerations in professional discipline cases despite the fact that they are elements of "punishment."
While they have not been officially adopted as rules by the Judges of the Superior Court, the American Bar Association's Standards for Imposing Lawyer Sanctions have frequently been utilized in determining the appropriate discipline to be imposed in presentment matters. Our Supreme Court has noted their usefulness in Statewide Grievance Committee v.Spirer, 247 Conn. 762, 782, 725 A.2d 948 (1999); see also StatewideGrievance Committee v. Shluger, 230 Conn. 668, 673 n. 10, 646 A.2d 781
(1994). The Standards provide useful guidance to a court that seeks to assure itself that all relevant considerations have been taken into account.
Section 3.0 of the Standards states that "[i]n imposing a sanction after a finding of lawyer misconduct, a court should consider the following factors: (a) the duty violated; (b) the lawyer's mental state; (c) the potential or actual injury caused by the lawyer's misconduct; and (d) the existence of aggravating or mitigating factors." The duties violated by the respondent in this case are those of competence, diligence, and fidelity to the client, as well as of candor and honesty toward the client and the court. Palmieri deliberately misled his client about his conflict of interest so that the financial impact of the CT Page 2614 sanctions imposed upon him personally would be borne, or at least shared, by her. In doing so, he also gave the District Court the impression that he was following its orders, when in fact he was not.
As to his mental state, Palmieri testified at some length about the burdens under which he worked as an associate of the New Haven law firm of Williams and Pattis.[1] He described chaotic working conditions and a nearly total lack of staff support that regularly left him scrambling to keep up with the obligations imposed upon him by his caseload, leading, in this case, to the derelictions that resulted in the imposition of monetary sanctions. While his working conditions may help to explain his deficiencies with regard to staying on top of his cases, however, they do not provide any justification for his misleading his client about her lack of responsibility for his financial sanctions and for seeking to avoid the court's order that they be paid personally.
There has been no claim that the client suffered actual injury as a result of Palmieri's wrongdoing. This is because, having been caught, he eventually gave his client her settlement proceeds in an amount that was at least the equivalent of what it would have been had the sanctions not been an issue.[2] It is indisputable, however, that the potential for financial injury to the client was not only present, but would have been actualized had his client not become concerned and made a complaint about him.
Section 9.1 of the ABA Standards states that "[a]fter misconduct has been established, aggravating and mitigating circumstances may be considered in deciding what sanction to impose." The § 9.22 aggravating factors include: (a) prior disciplinary offenses; (b) dishonest or selfish motive; (c) a pattern of misconduct; (d) multiple offenses; (e) bad faith obstruction of the disciplinary proceeding by intentionally failing to comply with rules or orders of the disciplinary agency; (f) submission of false evidence, false statements, or other deceptive practices during the disciplinary process; (g) refusal to acknowledge wrongful nature of conduct; (h) vulnerability of victim; (i) substantial experience in the practice of law; (j) indifference to making restitution; (k) illegal conduct, including that involving the use of controlled substances.
Although there have been other grievances brought against the respondent, none has achieved the status of a final judgment, and the court considers this situation to be the equivalent of having no prior disciplinary history. Palmieri's dishonest or selfish motive, however, to pass the impact of his personal financial sanctions on to his client, is a serious aggravating factor in this case. There has been no evidence that CT Page 2615 this instance is part of a pattern of misconduct, nor has there been evidence of multiple offenses. The petitioner points to the respondent's failure to file a timely answer to this presentment as "obstruction of the disciplinary proceeding by intentionally failing to comply with rules or orders of the disciplinary agency," but the responsive pleading was filed only two weeks late under circumstances that suggest no intent to obstruct the process, and the court does not consider this to be an aggravating factor. There has been no claim of the use of false evidence during the disciplinary process. Rather than refuse to acknowledge the wrongfulness of his conduct, Palmieri has admitted the allegations of the petition and, during his testimony, tearfully acknowledged his wrongdoing. There has been no evidence tending to show that Grudzien was an especially vulnerable victim. Palmieri has practiced law actively for nearly nine years, however, and surely, with that degree of experience, there is no excuse for his doing what he did. The court therefore considers his substantial previous experience in the practice of law as a somewhat aggravating factor. The respondent has made restitution. There is no evidence here of the sort of illegal conduct that the ABA Standards consider to be an aggravating factor.
The § 9.32 mitigating factors include: (a) absence of a prior disciplinary record; (b) absence of a dishonest or selfish motive; (c) personal or emotional problems; (d) timely good faith effort to make restitution or to rectify consequences of misconduct; (e) full and free disclosure to disciplinary board or cooperative attitude toward proceedings; (f) inexperience in the practice of law; (g) character or reputation; (h) physical disability; (i) mental disability or chemical dependency including alcoholism or drug abuse when: (1) there is medical evidence that the respondent is affected by a chemical dependency or mental disability; (2) the chemical dependency or mental disability caused the misconduct; (3) the respondent's recovery from the chemical dependency or mental disability is demonstrated by a meaningful and sustained period of a successful rehabilitation; and (4) the recovery arrested the misconduct and recurrence of that misconduct is unlikely; (j) delay in disciplinary proceedings; (k) imposition of other penalties or sanctions; (l) remorse; (m) remoteness of prior offenses.
Of these, (a), (b), (c), (d), (e), and (f) have effectively been discussed in the analysis of aggravating factors. The court views as mitigating factors Palmieri's lack of a disciplinary history, his having made restitution, and his admission of wrongdoing in this proceeding. The court heard evidence, biased, perhaps, but still rather compelling, about the respondent's character from Attorney Katherine Sylvester, with whom the respondent lives and who is the mother of his child. The court heard no evidence, one way or the other, regarding reputation, physical or CT Page 2616 mental disability, or delay in the proceedings. As there are no prior offenses, their "remoteness" is not an issue.
As to "(k) imposition of other penalties or sanctions," the respondent has been suspended from the District Court Bar for a period of two years. This court views this as a stern sanction for an attorney with nine years experience, a single act of misconduct, and no prior disciplinary history, and it deeply regrets the fact that the District Court did not spell out in greater detail its reasons for such harsh discipline. This is not to say that it would not be possible to justify a two-year suspension, but rather that such justification, if any, has not been made explicit. This court's task might have been rendered easier had there been such a statement of reasons.
As for remorse, there is no doubt in this court's mind that the respondent regrets his conduct, and it is equally clear that a good portion of that regret is based on his recognition of that conduct's impact on his career and livelihood. The line between self-reproach and self-pity is often unclear, but this court is satisfied that Palmieri has been chastened by this experience and it has little doubt that he will not repeat this particular course of conduct in the future.
Section 4.62 of the ABA Standards indicates that a suspension "is generally appropriate when a lawyer knowingly deceives a client and causes injury or potential injury to the client." That is the situation here. Section 2.3 of the Standards suggests that "[g]enerally, suspension should be for a period of time equal to or greater than six months," the commentary to that section noting that suspensions for less than that time "are not an effective means of protecting the public."
Citing the District Court action, the Standards and the various aggravating factors previously mentioned, the Petitioner has recommended a concurrent suspension from the practice of law for two years, with the added requirement that the Respondent be required to take and pass the Multistate Professional Responsibility Examination (MPRE) and/or to take and complete one continuing legal education class in professional responsibility prior to applying for reinstatement. The Respondent urges the court to impose only a reprimand.
This court agrees with the Petitioner that the Respondent's conduct is serious enough to warrant suspension. He created a conflict of interest with his client and attempted to transfer the sanctions' financial impact to his client. In this attempt to deceive her regarding her responsibility for the sanctions, he nearly caused her substantial economic injury. Whatever pressures he was under in his law firm, there CT Page 2617 was no excuse for this conduct. In this court's view, however, the offense, the aggravating factors and the mitigating factors do not justify the respondent's removal from the practice of law in both the state and federal courts in Connecticut for two years, a sanction that could conceivably end his career. In the absence of any stated reasons for the length of the federal suspension, this court feels under no obligation simply to rubber stamp it.
It should also be noted that the respondent's misconduct occurred in the context of a District Court case and involved orders of one or more judges and/or magistrates of that court. This court believes that, under such circumstances, where the misconduct did not directly involve the state court system, a lesser period of suspension from state court practice could nonetheless be "commensurate" with that of the District Court.
Other than Section 2.3 of the ABA Standards, a judge is given little guidance in determining the appropriate length of a suspension. One must therefore revisit the objectives to be accomplished by professional discipline and then try to fashion a disposition that appears most likely to accomplish those purposes. We know that those purposes include safeguarding the administration of justice and protecting the public and the courts. Doe v. Statewide Grievance Committee, supra. We also know, based on the discussion of "punishment" earlier in this Memorandum of Decision, that mere retribution is not among the legitimate goals of this process. In this court's view, however, deterrence, both specific and general, rehabilitation, and incapacitation are all appropriate considerations in the fashioning of a disposition, because all of these elements of punishment have the capacity to further the goals of protection of the public and the courts.
This court has little doubt that for this particular attorney, a total suspension from the practice of law in all of the courts, both state and federal, in the State of Connecticut for six months or longer would be a sufficient deterrent to him personally with respect to the kind of misconduct he exhibited in this case. Unless this court badly underestimates him, he will not mistreat a client in this fashion again once his period of suspension is completed.
Determining the general deterrent effect of a suspension is much more difficult to calculate. This court has frequently expressed its skepticism about the ability of sentences in criminal cases to deter others from similar acts, and, indeed, there is precious little in the way of empirical data that supports a conclusion that what a court does to Individual A is going to have an effect on Individual B's behavior. CT Page 2618 One reason for the lack of evidence to support general deterrence as a valid goal of criminal sentencing, again in this court's view, is that would-be criminals are not particularly avid readers of the "police blotter" and have little appreciation of the implications for them of a sentence imposed on someone else. As much as a sentencing judge may want to "send a message," the desired audience will probably not hear it. The situation with lawyers, however, is different. They know that the disciplinary orders of the judges of the Superior Court are published weekly in the Connecticut Law Journal, that the full texts of these decisions are readily available for a small fee, and that the organized Bar is a powerful "grapevine." Within the relatively insular world that is the Bar, this court believes that the dispositions in professional discipline cases are capable of having some general deterrent effect. In that context, although general deterrence is not the primary motivation behind this disposition, it is among the motivations, and a firm sanction is more likely to have such an effect than a lenient one.
Rehabilitation should be an important element of the ultimate sanction in a professional discipline case, especially one in which the respondent is eventually going to return to the practice of law. Taking and passing the Multi-State Professional Responsibility Examination, or an ethics course at an accredited law school, prior to reinstatement is an appropriate means of accomplishing that goal and will be incorporated by this court in its disposition.[3] This court also believes that a period of significant community service would help to accomplish that same purpose.
There are some lawyers who should not be practicing law at all and whose total removal from the profession is a legitimate goal. The court does not believe that this respondent is such a lawyer and therefore does not seek to serve the goal of incapacitation in reaching the disposition that follows.
Balancing all of these considerations as best it can, the court enters the following order: the respondent is suspended from the practice of law for a period of one year, effective April 1, 2003. Attorney Jonathan Einhorn of New Haven, who had previously been appointed by the District Court, is also appointed by this court to protect the interests of the respondent's clients. Prior to reinstatement, the respondent shall take and pass the Multistate Professional Responsibility Examination (MPRE) or an ethics course at an accredited law school and perform 250 hours of community service at an agency pre-approved by the undersigned. The court will retain jurisdiction over this matter. If the respondent completes the two conditions described above and is able to provide the court with satisfactory written evidence of such completion, he may file a motion on CT Page 2619 or after September 1, 2003 requesting that this court schedule a hearing to determine whether the suspension should be modified and terminated as of October 1, 2003.
Jonathan B. Silbert, Judge